**UNITED STATES of America,**
**Appellee,**

v.

**Melvin SMITH, Appellant.**

**No. 15435.**

United States Court of Appeals,
Fourth Circuit.

Argued May 13, 1971.

Decided Aug. 3, 1971.

---

Donald J. Reichle, Seaford, Va. (Court-appointed), for appellant.

Roger T. Williams, Asst. U. S. Atty. (Brian P. Gettings, U. S. Atty., on brief), for appellee.

Before SOBELOFF, Senior Circuit Judge, and WINTER and CRAVEN, Circuit Judges.

SOBELOFF, Senior Circuit Judge:

Melvin Smith appeals his conviction in the United States District Court for the Eastern District of Virginia of the unlawful possession, in violation of 18 U. S.C.A. § 1708, of a $100 United States postal money order which had been stolen from the mails. He alleges that the

trial judge committed reversible error: (1) by admitting into evidence testimony concerning a crime other than the one charged in the indictment; and (2) by instructing the jury as to the inference it could draw from proof of possession of recently stolen property. We reject both grounds of appeal.

## I

The appellant's first contention requires a brief recital of the facts. On September 16, 1968, Frank Ivy mailed two $100 United States postal money orders from St. Louis, Missouri, to his son, a student at Hampton Institute in Hampton, Virginia. The money orders were never received by Mr. Ivy's son. One of these, the possession of which was made the subject of the federal indictment, was cashed at a bank in Newport News, Virginia, on September 18, 1968, bearing the forged endorsement of the payee. While at trial the bank teller could not identify the person who cashed it, the defendant's fingerprint was found thereon.

The other money order, not mentioned in the federal indictment, was negotiated by the defendant on the same day at Goldstein Brothers Furniture Store in Newport News. It bore the forged endorsement of the payee and, in addition, Smith's own endorsement. He was given $32.00 credit on his account with the store and received the balance of the $100 in cash. Evidence as to the defendant's negotiation of this second postal money order at the Goldstein store was introduced over the defendant's vigorous objection that it concerned another crime for which the defendant was not then on trial. Moreover, Smith argues that, since he had been tried and acquitted in a Virginia state court on a charge of uttering that money order, the federal government is collaterally estopped from relitigating those issues which were determined in appellant's favor by his prior acquittal.

■■■■ The doctrine of collateral estoppel is indeed applicable in criminal cases, Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); Sealfon v. United States, 332 U.S. 575, 68 S.Ct. 237, 92 L.Ed. 180 (1948), but it is fundamental that the party estopped from relitigating issues must have been a party to the initial litigation. Serio v. United States, 203 F.2d 576 (5th Cir. 1953). The federal government is neither the same as nor in privity with the State of Virginia and therefore is not barred from relitigating facts resolved in defendant's favor in the former prosecution. See United States v. Hutul, 416 F.2d 607 (7th Cir. 1969); United States v. Feinberg, 383 F.2d 60 (2nd Cir. 1967); Ferina v. United States, 340 F.2d 837 (8th Cir. 1965). The Supreme Court explicitly accorded controlling significance in Bartkus v. Illinois, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959), and Abbate v. United States, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959), to the lack of identity between the state and federal governments in prosecuting those who violate the laws of both sovereigns. In holding that the due process and double jeopardy provisions of the Constitution do not prevent successive prosecutions by the state and federal governments for the same offense, the Court in those cases reaffirmed Chief Justice Taft's classic formulation of the "dual sovereignty doctrine" in United States v. Lanza, 260 U.S. 377, 382, 43 S.Ct. 141, 142, 67 L.Ed. 314 (1922):

> We have here two sovereignties, deriving power from different sources, capable of dealing with the same subject-matter within the same territory. * * * Each government in determining what shall be an offense against its peace and dignity is exercising its own sovereignty, not that of the other.

■■■■ Moreover, for another independent reason collateral estoppel does not avail the defendant. Even if the federal government were regarded in privity with the state in the first prosecution, a defendant claiming an estoppel has the burden of proving that facts he seeks to exclude from a subsequent trial

have been "necessarily determined" by the former verdict of acquittal. Adams v. United States, 287 F.2d 701, 705 (5th Cir. 1961). Appellant's failure to introduce into the record a transcript of the state trial makes it impossible to ascertain what facts were concluded adversely to the prosecution in the state trial and whether those facts were being relitigated at the federal trial. Nor has the appellant informed either the trial judge or this court as to the issues determined in the prior trial, asserting baldly that "any evidence" regarding the offense involved in the state trial was inadmissible. In United States v. Friedland, 391 F.2d 378 (2nd Cir. 1968), Judge Lumbard held that where the appellant had similarly failed to establish a record in the trial court as to the issues necessarily determined by his acquittal in a prior trial, he was barred from raising the issue of collateral estoppel on appeal. *See also* United States v. Feinberg, 383 F.2d 60 (2nd Cir. 1968). We hold the same view here.[1]

■ The admissibility of the evidence as to the defendant's negotiation of the postal money order at the Goldstein store was primarily a matter addressed to the discretion of the trial judge. While evidence of the commission of another offense is not admissible to show criminal propensities in the person on trial, such evidence is admissible where it tends to establish a common scheme, plan, system, or design, or where it is so related to the crime charged that it serves to establish motive, knowledge, intent, or the absence of mistake or accident. United States v. Samuel, 431 F.2d 610 (4th Cir. 1970); Lovely v. United States, 169 F.2d 386 (4th Cir. 1948); *see also* Rule 404(b) of the Revised Draft of the Proposed Rules of Evidence for the United States District Courts and Magistrates.[2] The decision in a particular case may be a difficult one, involving "balancing, on the one side, the actual need for the other-crimes-evidence in light of the issues and the other evidence available to the prosecution, the convincingness of the evidence that other crimes were committed and that the accused was the actor, and the strength or weakness of the other-crimes-evidence in supporting the issue, and on the other, the degree to which the jury will probably be roused by the

1. Justice Schaefer has written:

"The close division of the Supreme Court in *Bartkus* and *Abbate,* coupled with the subsequent decision in Benton v. Maryland, [395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707] which extended the protection against double jeopardy to state court actions, requires us to anticipate that the two sovereignties rule may be abandoned. If it is, then we would at least expect to see the doctrine of collateral estoppel, which the Court applied to the reprosecution in Ashe v. Swenson, applied to successive state-federal and federal-state prosecutions. As has been pointed out, collateral estoppel has obvious limitations. Nevertheless, the *Ashe* approach would have a measurable effect not only in cases like *Bartkus,* where the state and federal laws deal with what is essentially the same offense, but in those cases in which the state and federal statutes, although substantially different with respect to the type and importance of the interests to be protected, and the severity of the sanction, nevertheless require proof of some common evidentiary element." Schaefer,

Unresolved Issues in the Law of Double Jeopardy: Waller and Ashe, 58 Calif.L. Rev. 391, 402 (1970).

This is an interesting speculation, but a subordinate court should not reach out to anticipate the Supreme Court's future resolution of the point, especially in this case where, as we have seen, the record does not present a sufficient basis for the collateral estoppel claim.

2. Thus, for example, in United States v. Windsor, 417 F.2d 1131 (4th Cir. 1969), we held that, in a prosecution for the interstate transportation of several forged checks, it was proper to admit evidence that two checks not mentioned in the indictment had been passed by the defendant within the same time period, in the same manner, and with the aid of the same confederates as in the instances of criminal activity specified in the indictment. *See also* United States v. Carter, 433 F.2d 874 (10th Cir. 1970); Holt v. United States, 404 F.2d 914 (10th Cir. 1968); United States v. Carter, 401 F.2d 748 (3rd Cir. 1968).

evidence to overmastering hostility." McCormick, Evidence (1954 Ed.), p. 332.

■ We think there can be no doubt here that evidence concerning the defendant's negotiation at the Goldstein Brothers store of the postal money order which had been stolen from the *same envelope* and negotiated on the *same day* as the postal money order specified in the federal indictment was admissible to show that Smith possessed the latter, and had knowledge that it had been stolen, the essential elements of the federal crime. This episode furnishes part of the context of the crime for which the defendant was on trial in the district court. Any resultant impugning of his general character was ·clearly outweighed by its compelling evidentiary force.

■ The fact of an acquittal, even though in another sovereign jurisdiction, is a relevant factor to be considered by the trial judge in ruling on admissibility. An acquittal may introduce an element of uncertainty as to the defendant's culpability and may diminish the convincingness of the evidence that another crime was committed. The trial judge, however, is not bound to accept a judgment of acquittal in the courts of another sovereignty as conclusive, especially where, as in this case, the defendant's failure to introduce the transcript of the former trial rendered it impossible to learn the actual basis that underlay the verdict. We find no error in the court's ruling.

## II

■ The second ground for reversal urged by the appellant is that the trial judge erred in instructing the jury as follows:

> * * * if you find beyond a reasonable doubt that that letter or its contents, that is, the money order at the banking institution, was stolen from the United States mail before delivery to the addressee, namely Mr. William Ivy, I believe, and that, while recently stolen, the letter or its contents were in the possession of the defendant, you may be justified in drawing an inference that such possession was with knowledge that it had been stolen, unless other facts and circumstances lead you to a contrary conclusion; * * *

This instruction that an inference of guilty knowledge may be drawn from the possession of recently stolen property has been uniformly upheld. Wilson v. United States, 162 U.S. 613, 16 S.Ct. 895, 40 L.Ed. 1090 (1896); United States v. Smith, 407 F.2d 35 (4th Cir. 1969); United States v. Galvin, 394 F. 2d 228 (3rd Cir. 1968); United States v. Hines, 256 F.2d 561 (2nd Cir. 1958).[3] In Aron v. United States, 382 F.2d 965 (8th Cir. 1967), the court explained that this instruction "is a factually sound and a necessary evidentiary rule. Without this evidentiary rule in criminal cases it would be almost impossible to consider for conviction any of the possessors or fences of stolen property unless they admitted that they knew the property to be stolen, which is an admission not likely to be forthcoming." 382 F.2d at 970. We perceive no error.

Affirmed.

3. See also United States v. Jones, 418 F.2d 818 (8th Cir. 1969), for a discussion of the historical background of this instruction.