UNITED STATES of America

v.

**Clifton William BYARS, William Ernest Simms, Sandy Sims, Betty Carroll.**

**Crim. No. 91–00079–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

April 24, 1991.

Jay Apperson, Asst. U.S. Atty., Alexandria, Va., for U.S.

James M. Lowe, Alexandria, Va., for Clifton William Byars.

Drewry B. Hutcheson, Jr., Alexandria, Va., for William Ernest Simms.

Joseph McCarthy, Alexandria, Va., for Sandy Sims.

Becky J. Moore, Land, Clark, Carroll & Mendelson, Alexandria, Va., for Betty Carroll.

John T. Richards, Jr., Washington, D.C., for Lisa Carroll.

## MEMORANDUM OPINION

ELLIS, District Judge.

Defendants' pretrial suppression and dismissal motions attack (i) the relitigation of the suppression motion on the ground that a prior state court ruling is entitled to preclusive effect, (ii) the execution of the search warrant for failure to comply with the "knock and announce" statute, (iii) the search warrant itself on grounds of staleness, and (iv) the entire prosecution as an oppressive and impermissible effort by federal prosecutors to try again after state prosecutors have failed. For the reasons recorded here, defendants' motions fail.

On June 1, 1989, Investigator Thomas Kennedy and other Virginia law enforcement officers searched an apartment at 60 South Van Dorn Street in Alexandria pursuant to a state search warrant. The search yielded 14 ounces of cocaine, 13 ounces of marijuana, $5,000 in United States currency, a .32 caliber handgun, and various paraphernalia used in the packaging and distribution of narcotics. Based in part on the seized evidence, Assistant Commonwealth Attorney Jennifer Pollard brought state drug charges against defendants Clifton Byars and William Simms. The defendants moved to suppress the evidence, and a hearing was held before Judge Alfred D. Swersky of the Alexandria Circuit Court. Judge Swersky granted the motion by letter opinion, concluding that the Commonwealth had failed to carry its burden of showing that the search was executed in conformity with governing constitutional principles.[1] The Commonwealth Attorney's Office then *nolle prosequied* the charges against Byars and Simms. The federal government subsequently began an investigation into defendants' activi-

---

1. Judge Swersky's opinion initially stated the issue to be whether the execution of the warrant violated Virginia's "knock and announce rule." But it seems clear from the remainder of the opinion and from the cases cited for the "rule," *Johnson v. Commonwealth,* 213 Va. 102, 189 S.E.2d 678 (1972) and *Heaton v. Commonwealth,* 215 Va. 137, 207 S.E.2d 829 (1974), that the use of "rule" was intended simply as shorthand for Fourth Amendment and state constitutional principles.

ties, and Pollard became a Special Assistant United States Attorney.[2]

## I. *Collateral Estoppel and Comity*

■ Defendants first argue that Judge Swersky's factual and constitutional determinations should not be relitigated here. This Court, they argue, should be bound by the state court's suppression order. This argument, however inviting, is clearly incorrect. To be sure, it is established that the doctrines of res judicata and collateral estoppel apply in criminal cases, see *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); *Sealfon v. United States*, 332 U.S. 575, 68 S.Ct. 237, 92 L.Ed. 180 (1948), and more particularly, to pretrial dispositions of issues in criminal cases. *See United States v. Blackwell*, 900 F.2d 742, 745 (4th Cir.1990). Equally well established is the principle that the party estopped from religitigating issues must have been a party to the initial litigation. *See United States v. Smith*, 446 F.2d 200 (4th Cir.1971). *Smith* is instructive on this point. There, the Fourth Circuit explained that "[t]he federal government is neither the same as nor in privity with the State [sic] of Virginia and therefore is not barred from relitigating facts resolved in defendant's favor in the former prosecution." *Id.* at 202; *see also* 1 LaFave & Israel, Criminal Procedure § 10.6(d) (1984) ("For a ruling on a motion to suppress in a prior case to have either conclusive or presumptive effect in a later case, there must be an identity of parties."). Collateral estoppel therefore does not preclude this Court from reviewing the constitutionality of the search *de novo*. *See United States v. Ricks*, 882 F.2d 885 (4th Cir.1989), *cert.*

*denied*, —— U.S. ——, 110 S.Ct. 846, 107 L.Ed.2d 841 (1990); *United States v. Safari*, 849 F.2d 891 (4th Cir.) (grant of motion to suppress in state proceeding is not accorded collateral effect on same issue in subsequent federal prosecution), *cert. denied*, 488 U.S. 945, 109 S.Ct. 374, 102 L.Ed.2d 363 (1988); *United States v. Culbreath*, 915 F.2d 1566 (4th Cir.1990).

■ Defendants' motion also raises, appropriately, comity considerations. Comity between federal and state courts is indeed important.[3] In this situation, however, the law is clear that a federal court must make an independent determination as to the constitutionality of the search. In *Elkins v. United States*, 364 U.S. 206, 223–24, 80 S.Ct. 1437, 1447, 4 L.Ed.2d 1669 (1960), the Supreme Court stated that "[i]n determining whether there has been an unreasonable search and seizure by state officers, a federal court must make an independent inquiry, whether or not there has been such an inquiry by a state court, and irrespective of how any such inquiry may have turned out." *See also United States v. Mejias*, 552 F.2d 435, 444 & n. 12 (2d Cir.), *cert. denied*, 434 U.S. 847, 98 S.Ct. 154, 54 L.Ed.2d 115 (1977).

## II. *Knock and Announce*

Consistent with the Supreme Court's direction, the Court reviewed the transcript of the state proceedings and held a *de novo* suppression hearing. The government elicited testimony from Investigator Kennedy and two other officers who accompanied him on the search. Defendants declined

**2.** The United States Attorney for the Eastern District of Virginia frequently appoints lawyers from the Department of Justice, the Commonwealth Attorney's Office, and the government of the District of Columbia to serve as Special Assistant United States Attorneys for a specified period of time. *See* 28 U.S.C. §§ 515(a), 543. The purpose of this practice is to aid law enforcement by making special expertise available to federal prosecutors. *See In re Perlin*, 589 F.2d 260, 265–66 (7th Cir.1978) (interests of government may require "assistance of one who is specially or particularly qualified by reasons of his peculiar knowledge and skill") (quoting legislative history of 28 U.S.C. § 515(a)); *United States v. Wrigley*, 520 F.2d 362 (8th Cir.) (pur-

pose of statute pertaining to appointment of special attorneys is to aid law enforcement, center responsibility in Attorney General, and ensure that United States is represented by persons with authority), *cert. denied*, 423 U.S. 987, 96 S.Ct. 396, 46 L.Ed.2d 304 (1975).

**3.** *See Mitchum v. Foster*, 407 U.S. 225, 243, 92 S.Ct. 2151, 2162, 32 L.Ed.2d 705 (1972); *Younger v. Harris*, 401 U.S. 37, 44, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971) (comity, meaning "a proper respect for state functions," is a "vital consideration"); *see generally* P. Low & J. Jeffries, Federal Courts and the Law of Federal–State Relations 541–71, 1138–1202 (2d ed. 1989).

the opportunity to call witnesses, electing instead to rely on the testimony given in state court. Having considered all the evidence, the Court concludes, with some reluctance,[4] that it must reach a different result from that reached by Judge Swersky.

■ Defendants' first motion to suppress relies on 18 U.S.C. § 3109, the federal "knock and announce" statute.[5] The evidence compels the conclusion that this reliance is misplaced. To begin with, the testimony clearly establishes that the officers made their entry through a door that had been opened. Given this, the statute is inapplicable, for the majority rule is that entry through an open door is not a "breaking" within the meaning of the statute. *See United States v. Remigio,* 767 F.2d 730 (10th Cir.), *cert. denied,* 474 U.S. 1009, 106 S.Ct. 535, 88 L.Ed.2d 465 (1985) (collecting cases); *see also United States v. Salter,* 815 F.2d 1150 (7th Cir.1987) (police action in inducing defendant to open door by means of a ruse did not constitute intrusion within meaning of the statute). In *Remigio,* the court held that government officials armed with a warrant and entering a house through an open door in the presence of a defendant need not comply with 18 U.S.C. § 3109. Similarly, testimony from Investigator Kennedy and two other officers who participated in the search establish that the apartment door was opened voluntarily in response to Investigator Kennedy's knock by an individual later identified as John Sheets. Investigator Kennedy and Sheets exchanged a terse greeting, after which Kennedy, who was dressed in street clothes, identified himself as a police officer armed with a search warrant. At that point, Sheets began to close the door, but was prevented from doing so by Investigator Kennedy, who used his foot to block the door's closing. Investigator Kennedy and the other officers then forcibly entered the apartment. A review of the state suppression hearing transcript confirms that Sheets and the other defense witnesses conceded that the door was opened voluntarily in response to Kennedy's knock. Accordingly, the officers were not required to comply with the statute. *Compare Remigio* (statute inapplicable on facts suggesting that defendant merely opened door to peer out and was then jumped and subdued by agents who did not announce their identity or purpose prior to crossing the threshhold); *see also United States v. Jackson,* 585 F.2d 653, 662 (4th Cir.1978) (entry simultaneous with announcement is permissible where object of search is "susceptible of easy destruction"). Even assuming the statute's applicability, however, the Court finds credible and convincing the testimony of Kennedy and the other officers that their identity and purpose were announced prior to entry. That testimony is ample to overcome any prima facie showing of a violation established by defendants. *See United States v. Murrie,* 534 F.2d 695 (6th Cir.1976) (if defendant makes prima facie case of statutory violation, burden shifts to government). The officers' conduct was reasonable under the circumstances. *See Simons v. Montgomery County Police Officers,* 762 F.2d 30, 32 n. 1 (4th Cir.1985) (applica-

---

4. This reluctance is lessened, however, given that Judge Swersky's letter opinion set out no factual or witness credibility findings, but merely set forth the governing legal principles and stated in conclusory fashion that the Commonwealth had not met its burden of proof.

5. 18 U.S.C. § 3109 provides:

The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

The purpose of the statute is to restrict the government's authority to intrude upon the privacy of citizens and to protect law enforcement officers who might be mistaken for unlawful intruders if they were to enter a residence unannounced. *See Miller v. United States,* 357 U.S. 301, 306–08, 312 n. 12, 78 S.Ct. 1190, 1194–95, 1197 n. 12, 2 L.Ed.2d 1332 (1958) (arrest held unlawful and evidence inadmissible where defendant opened door voluntarily but police forced entry before announcement of purpose). A "breaking" does not require the use of force. *See Sabbath v. United States,* 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968) (unlatching a closed, unlocked door was an unannounced intrusion in violation of the statute).

tion of knock and announce requirement preliminary to search by state officers is controlled by Fourth Amendment reasonableness standard), *cert. denied,* 474 U.S. 1054, 106 S.Ct. 789, 88 L.Ed.2d 767 (1986).

### III. *Stale Warrant*

Defendants' second motion to suppress is based on the argument that the probable cause supporting the warrant was stale, either because there was a nine-day delay between the issuance of the warrant and the time of its execution, or because some of the evidence to be seized was not at the apartment at the time the warrant issued. Neither claim has merit. With respect to delay, the Fourth Circuit explained in *United States v. McCall,* 740 F.2d 1331, 1336 (1984), that the issue of staleness is resolved by looking at "all the facts and circumstances of the case, including the nature of the unlawful activity alleged, the length of the activity, and the nature of the property to be seized." *See also United States v. Simpkins,* 914 F.2d 1054, 1059 (8th Cir.1990) (test is whether probable cause still existed at the time of execution; court must "evaluate the nature of the criminal activity and the kind of property for which authorization to search is sought") (quoting *United States v. Foster,* 711 F.2d 871, 878 (9th Cir.1983), *cert. denied,* 465 U.S. 1103, 104 S.Ct. 1602, 80 L.Ed.2d 132 (1984)).

Viewing the facts and circumstances of this case in this light, it is apparent that probable cause did not dissipate and become stale. To begin with, it is relevant, though not dispositive, that the execution of the warrant in issue occurred within the time periods prescribed by both federal and Virginia rules. *See* Rule 41(c)(1), Fed.R.Crim.P. (warrant shall command officer to search within a specified period of time not to exceed ten days); Va.Code § 19.2–56 (search warrant to be executed within fifteen days or returned to issuing officer). Beyond this, the nature of the unlawful activity—drug trafficking—makes staleness unlikely in the circumstances at bar. The indictment alleges that defendants Byars and Simms leased the apartment in March 1989 and conducted multiple drug transactions and drug "cooking" operations there until the time of the search. The items of evidence sought to be seized were tools of this business; the character of this evidence invites the inference that much of it would remain at the apartment over a period of time. *See, e.g., United States v. Clayton,* 924 F.2d 1053 (4th Cir.1991). Surveillance prior to the issuance of the warrant supports this inference. That surveillance disclosed drug customers going in and out of the apartment for some time. Moreover, undercover police officers made a number of drug purchases from these customers. The picture is one of an ongoing, bustling narcotics emporium. As such, it is reasonable to assume that the enterprise will remain in place for some period of time. *See Simpkins,* 914 F.2d at 1059 ("It is not unreasonable for officers to conclude that large-scale drug operations may remain at the same location for a period of time."). It is also pertinent to note that in similar cases, courts have found probable cause to exist despite delays of the order that occurred here. *See, e.g., United States v. Shegog,* 787 F.2d 420 (8th Cir.1986) (eight-day delay between issuance of warrant and execution held not unreasonable); *United States v. Bedford,* 519 F.2d 650 (3d Cir.1975) (warrant need only be executed within a reasonable time after issuance; eight-day delay did not vitiate probable cause), *cert. denied,* 424 U.S. 917, 96 S.Ct. 1120, 47 L.Ed.2d 323 (1976). *See also United States v. Jones,* 801 F.2d 304 (8th Cir.1986) (passage of time between transactions on which warrant is based and ensuing search is less significant when facts recited indicate activity of a continuous nature). Based on their surveillance and drug purchases, the officers in this case had good reason to believe that defendants were engaged in an ongoing pattern of drug distribution. In short, the officers had no reason to believe that the situation at the apartment had changed in the intervening nine days. Accordingly, the warrant's probable cause had not become stale, nor was there any unreasonable delay in the warrant's execution.

■ With respect to the second component of their staleness claim, defendants rely chiefly on a statement made by Investigator Kennedy at the state court suppression hearing. There, he stated: "I also wanted to make sure that there was [sic] narcotics on the premises." This statement, defendants contend, demonstrates that the officers had no probable cause at the time the warrant was issued. Instead, defendants argue, the officers obtained the warrant hoping that probable cause would develop in the future if narcotics were brought to the apartment, at which time the warrant would be executed. The transcript does not support defendants' argument. Investigator Kennedy also testified that drugs were leaving the apartment and that drug dealing was ongoing. For example, Investigator Kennedy prefaced the statement relied on by defendants with the statement that "[t]here was a series of cocaine buys in progress from that location [the apartment]." Even if defendants were correct in asserting that the warrant was aimed exclusively at contraband not yet present at the apartment, however, the warrant, in the instant circumstances, would still be valid. It is not unreasonable for a magistrate to believe that certain controllable or predictable events will occur in the near future. *See United States v. Lowe,* 575 F.2d 1193, 1194 (6th Cir.) ("Contraband does not have to be presently located at the place described in the warrant if there is probable cause to believe that it will be there when the search warrant is executed."), *cert. denied,* 439 U.S. 869, 99

S.Ct. 198, 58 L.Ed.2d 180 (1978); *United States v. Bedford,* 519 F.2d at 653 (warrant valid where agent decided to wait for additional information as to when "the bulk of the narcotics" would be in defendant's apartment); *United States v. Dunnings,* 425 F.2d 836, 840–41 (2d Cir.1969) (court approved nine-day delay in search warrant execution where delay occurred in order to assure that heroin described in affidavit would be present), *cert. denied,* 397 U.S. 1002, 90 S.Ct. 1149, 25 L.Ed.2d 412 (1970).

## IV.  *Dual Prosecution*

■ Finally, defendants argue that the charges against them stem from an illegal and oppressive dual prosecution that contravenes government policy.[6] This claim raises an issue of significant concern, but is ultimately unconvincing on the facts presented.

■ The Supreme Court has held repeatedly that successive prosecutions based on the same conduct are permissible if brought by separate sovereigns. *See Heath v. Alabama,* 474 U.S. 82, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985); *United States v. Wheeler,* 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978); *United States v. Lanza,* 260 U.S. 377, 382, 43 S.Ct. 141, 142, 67 L.Ed. 314 (1922) ("dual sovereignty" doctrine provides that "an act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each"). Thus, as a general matter a trial in

---

**6.** Defendants' policy reference is to the "Petite Doctrine," an internal policy of the United States Department of Justice that generally precludes the initiation or continuation of federal prosecutions following the termination of a state prosecution based on the same acts unless there is a "compelling federal interest supporting the dual or successive federal prosecution" and the approval of an Assistant Attorney General is obtained. *See* United States Attorneys' Manual, ch. 2, § 9–2.142. The doctrine takes its name from *Petite v. United States,* 361 U.S. 529, 530–31, 80 S.Ct. 450, 451, 4 L.Ed.2d 490 (1960) (per curiam) (recognizing policy as formally defined by the Attorney General). It is not clear whether the doctrine is even applicable to this case. *See* U.S.A.M. § 9–2.142(a)(1), n. 3 (policy does not apply where state proceeding did not progress to the stage at which jeopardy at-

tached). In any event, because the policy guidelines are neither statutes nor regulations, they confer no substantive or procedural rights on criminal defendants. *See United States v. Howard,* 590 F.2d 564, 567–68 (4th Cir.), *cert. denied,* 440 U.S. 976, 99 S.Ct. 1547, 59 L.Ed.2d 795 (1979); *United States v. Musgrove,* 581 F.2d 406, 407 (4th Cir.1978); *see also United States v. Harrison,* 918 F.2d 469, 475 (5th Cir.1990) (collecting cases). Accordingly, they cannot be enforced against the government by a defendant. *See United States v. Caceres,* 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979) (failure of IRS agent to follow internal IRS electronic surveillance regulations did not require suppression of tape recordings in prosecution of taxpayer for bribing IRS agent); *United States v. Patterson,* 809 F.2d 244, 248 (5th Cir.1987).

a state court does not bar trial in a federal court for the same criminal conduct. *See Abbate v. United States,* 359 U.S. 187, 194, 79 S.Ct. 666, 670, 3 L.Ed.2d 729 (1959); *see also Bartkus v. Illinois,* 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959) (federal prosecution followed by state prosecution). In *Bartkus,* however, the Supreme Court arguably identified a sham exception to the dual sovereignty doctrine when it noted that the successive prosecutions before it did "not sustain a conclusion that the state prosecution was a sham and cover for a federal prosecution, and thereby in essential fact another federal prosecution." 359 U.S. at 124, 79 S.Ct. at 678. Defendants contend that this federal prosecution is such a sham. They argue that Assistant Commonwealth's Attorney Pollard and Investigator Kennedy, frustrated by Judge Swersky's ruling in the state case, are now vindictively pursuing this prosecution. For support, defendants rely on Pollard's role in both proceedings and contend that these facts justify application of the *"Bartkus* exception."

While some courts have expressed doubt as to whether the Supreme Court's comment was intended to establish a full-blown exception, see *United States v. Patterson,* 809 F.2d 244, 247 n. 2 (5th Cir.1987), the majority of courts considering the question have inferred from *Bartkus* that collusion between federal and state authorities might, in certain circumstances, bar the second prosecution. *See United States v. Bernhardt,* 831 F.2d 181, 182 (9th Cir.1987) (collecting cases). This Court agrees that the inference is appropriate. Excessive collusion, in which the federal government or a state government simply employs the other sovereign as a cover or "tool," *Bartkus,* 359 U.S. at 123, 79 S.Ct. at 678, directly affronts the notion of dual sovereignty. In *United States v. Lanza,* 260 U.S. 377, 382, 43 S.Ct. 141, 142, 67 L.Ed. 314 (1922), the Supreme Court explained that under principles of dual sovereignty "[e]ach government in determining what shall be an offense against its peace and dignity is exercising its own sovereignty, not that of the other." Similarly, in *Bartkus* the Court engaged in an analysis of dual sovereignty as an aspect of federalism. Given this analysis, it seems quite clear that federalism is undermined by federal-state collusion that is animated by vindictiveness and designed to pursue oppressive successive prosecutions for the same allegedly illicit conduct.

At the same time, there is no doubt that federal-state cooperation in the investigation and prosecution of crimes is ordinarily desirable and entirely legitimate. Not surprisingly, therefore, the *"Bartkus* exception," while important, has been narrowly construed. *See, e.g., United States v. Aboumoussallem,* 726 F.2d 906 (2d Cir. 1984). For example, it is well established that a joint investigation of criminal activity, without more, does not preclude separate prosecutions. *See id.* at 910 (citing cases). Similarly, it has been held that independent federal involvement, as here, operates to cleanse a successive federal prosecution of the taint of sham or cover. *See Bernhardt, supra,* 831 F.2d at 183.

Defendants rely chiefly on *United States v. Belcher,* 762 F.Supp. 666 (W.D.Va.1991), in which the court dismissed marijuana and firearms charges against defendants who previously had been prosecuted unsuccessfully under state law for virtually the same offenses. The court found the federal prosecution to be a sham or cover for the state prosecution. In reaching this conclusion, it relied heavily on the fact that both cases were conducted by the same prosecutor, a Commonwealth's Attorney who also functioned simultaneously as a Special Assistant United States Attorney. Indeed, the court's opinion mentions no other prosecutor as being involved with the litigation of either case. *Compare United States v. Safari,* 849 F.2d at 893 (describing appointment of Assistant Commonwealth's Attorney who prosecuted state case as Special Assistant United States Attorney for federal prosecution of same defendant as "a function of the executive branch" without mentioning *Bartkus* exception).

The seemingly egregious facts of *Belcher* are inapposite here. Indeed, the instant case more closely resembles the facts of *Bernhardt,* in which the Ninth Circuit held that a successive federal prosecution would

be saved from the *Bartkus* exception if the district court found independent federal involvement. The record here amply reflects such independent involvement. To begin with, the federal prosecution is no mere repeat of the state case, in which Byars and Simms were the only defendants. Instead, the federal prosecution reflects a broader indictment against eight defendants and co-conspirators, having as its ultimate target two international drug suppliers. In response to defendants' specific claim, the government submits that Pollard has played only a minimal role in the federal case; the supervision of the investigation, preparation of witnesses, grand jury work, and primary drafting of the indictment were the responsibility of the Assistant United States Attorney who is now prosecuting the defendants. Indeed, the government's investigation of this case began in December 1989, yet the Assistant United States Attorney now in charge did not even meet Pollard until December 1990. The government further denies that Pollard or Kennedy have ever expressed personal vindictiveness against the defendants. At the suppression hearing, Investigator Kennedy convincingly denied a remark reflecting vindictiveness attributed to him by defendants. Defendants offer no persuasive evidence to the contrary. Accordingly, this federal prosecution does not fall within the *Bartkus* sham exception.

An appropriate order has issued.