931 F.2d 888
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Leon James RIDINGS, Defendant-Appellant.
 No. 89-5229.
 United States Court of Appeals, Fourth Circuit.
 Submitted Nov. 30, 1990.
Decided April 30, 1991.
As Amended June 3, 1991.
 
 Appeal from the United States District Court for the Western District of North Carolina, at Statesville. Richard L. Voorhees, District Judge. (CR-89-20-ST)
 Leon James Ridings, appellant pro se.
 Thomas J. Ashcraft, United States Attorney, Charlotte, N.C., for appellee.
 W.D.N.C.
 AFFIRMED.
 Before PHILLIPS, WILKINSON and NIEMEYER, Circuit Judges.
 PER CURIAM:
 
 
 1
 On July 11, 1989, Leon James Ridings was charged in a 3-count indictment of (1) at a time before November 1988 and continuing through November 11, 1988, conspiring to possess and distribute in excess of 100 kilograms of marijuana in violation of 21 U.S.C. Secs. 841(a)(1) and 846, (2) on or about November 11, 1988, possessing with intent to distribute in excess of 100 kilograms of marijuana in violation of 21 U.S.C. Secs. 2 and 841(a)(1), and (3) carrying a firearm in commission of a drug trafficking offense in violation of 18 U.S.C. Sec. 924(c)(1). Following a jury trial, Ridings was convicted of each count and sentenced to 181 months imprisonment, five years supervised release, and a special assessment of $150.
 
 
 2
 * At trial, the prosecution introduced testimony from two witnesses involved with Ridings in transporting marijuana from El Paso, Texas, to Denton, North Carolina. William Lee Biddle testified that he met Ridings while he was working as a bouncer at a bar in El Paso. Ridings offered him a job driving cars loaded with marijuana from El Paso to North Carolina. The first time Biddle helped Ridings transport marijuana was in September 1988 when Ridings helped Biddle and his girlfriend move to North Carolina. About two or three weeks later, Biddle and Ridings returned to El Paso for more marijuana. During this trip, Ridings told Biddle that he had been dealing in marijuana for a few years. They returned to North Carolina with about two hundred pounds of marijuana.
 
 
 3
 The third trip culminated in their arrest. They had returned to El Paso at the end of October 1988. Ridings told Biddle that he intended to transport about 500 pounds of marijuana and therefore needed to hire a driver with a truck. After several days, Ridings found Johnny Ray Huffman to do the job. Ridings and Huffman set off in a tractor-trailer carrying a little over 1000 pounds of marijuana, and Biddle and another man set off in a pickup truck. Both parties were arrested in North Carolina.
 
 
 4
 Huffman testified that in November 1988 he was employed as a long distance truck driver. He had driven a load of furniture to Arizona and was looking for a load to drive back to North Carolina. After having no luck in finding a return load in Arizona, he started looking in El Paso. He was unsuccessful in finding a legitimate load, so he approached someone about transporting a large quantity of drugs. This person introduced Huffman to Ridings.
 
 
 5
 Before travelling to Arizona, Huffman had been arrested in North Carolina for possessing with intent to distribute approximately fifty-two pounds of marijuana and over 600 pills of a Schedule IV controlled substance. His lawyer told him his best option was to provide substantial assistance to the government to avoid a mandatory sentence. On November 9, 1988, Huffman contacted the prosecuting officer in his case, Tony Keller, to tell him he could bring a large-scale dealer into North Carolina. Keller told Huffman to go ahead with the deal.
 
 II
 
 6
 Ridings' first argument on appeal[1] centers on Biddle's testimony about the two marijuana-transporting trips prior to the one for which they were arrested. He claims he was denied due process because testimony about prior bad acts was admitted in violation of Fed.R.Evid. 104(b), 403, and 404(b). He claims that the prior acts were not relevant and that the Assistant United States Attorney was attempting to prove character. He also claims that Biddle's testimony was unsubstantiated because he had no first-hand knowledge of the origin of the marijuana or how the marijuana came to be in the vehicles they were driving.
 
 
 7
 His claim is meritless for two reasons. First, Count I of his indictment charges "[t]hat beginning at a time before November, 1988, and continuing through November 11, 1988, within the Western District of North Carolina and elsewhere, [Ridings] did ... conspire, confederate and agree with William Lee Biddle ... to unlawfully possess with intent to distribute in excess of 100 kilograms of marihuana." The first of three trips Biddle described in his testimony took place in October 1988, which was easily contemplated by the conspiracy charge "beginning at a time before November 1988." This testimony was thus directly relevant in proving Count I itself and not as Rule 404(b) evidence.
 
 
 8
 Treating these other two trips as prior bad acts rather than acts in furtherance of a conspiracy will not yield a different result. The district court's decision to admit evidence pursuant to Rule 404(b) is discretionary, and this decision will not be disturbed unless it was arbitrary or irrational. United States v. Greenwood, 796 F.2d 49, 53 (4th Cir.1986). Prior bad acts are admissible if they are (1) relevant to an issue other than character, (2) necessary, and (3) reliable. United States v. Rawle, 845 F.2d 1244, 1247 (4th Cir.1988). The evidence is "relevant" if it is sufficiently related to the charged offense. Id. at 1247 n. 3. It is "necessary" where it is an essential part of the crimes on trial or where it "furnishes part of the context of the crime." Id. at 1247 n. 4 (quoting United States v. Smith, 446 F.2d 200, 204 (4th Cir.1971). Finally, the evidence is inadmissible under Rule 403 only if the probative value of the evidence is substantially outweighed by its prejudicial effect. Morgan v. Foretich, 846 F.2d 941, 945 (4th Cir.1988).
 
 
 9
 Biddle's testimony was relevant to show intent, knowledge, and a common scheme or plan. It was necessary in that it supplied the context for the crime. The close tie between these "prior acts" and the crime charged tips the Rule 403 balance in favor of probative value. Although both Biddle and Huffman were motivated by potentially reduced sentences to testify against Ridings, in light of the relevance of and necessity for the testimony, the district court did not abuse its discretion. Moreover, a limiting instruction concerning Biddle's testimony agreement was given to the jury. See Rawle, 845 F.2d at 1248.
 
 
 10
 Ridings' final point in his first argument is that Biddle's testimony was unsubstantiated. However, Rule 404(b) does not require the district court to find the government proved the "other act" evidence by a preponderance of the evidence before admitting it. Huddleston v. United States, 485 U.S. 681, 682 (1988). Rather, the test is whether there is sufficient evidence to support a jury finding that the defendant committed the similar act. Id. at 688. On this basis, Ridings' claim of unsubstantiated testimony is without merit.
 
 III
 
 11
 Ridings' second major contention on appeal is that he was denied due process by the government's failure to disclose testimony agreements with its witnesses, a deal made with Huffman, and Huffman's past criminal record. Each of these claims is belied by the record.
 
 
 12
 Ridings claims the court erred in granting the government's motion for nondisclosure of the testimony agreements with its witnesses. The government only stated that it had not entered into any testimony agreements at the time Ridings filed his motion for disclosure. The court granted the government's request that any agreements it should enter into be disclosed on the morning it first put on evidence. Biddle was the only witness who entered into a testimony agreement, and he did so approximately two days before trial. The agreement was disclosed as ordered, and it was read to the jury with an accompanying limiting instruction. There was nothing unusual or unexpected. Although failure to disclose such agreements violates due process, see Giglio v. United States, 405 U.S. 150 (1972), disclosure need only be made in time for effective use at trial. Cf. United States v. Smith Grading and Paving, Inc., 760 F.2d 527 (4th Cir.) (exculpatory information put before jury during cross-examination of first trial witness), cert. denied, 474 U.S. 1005 (1985). The time of disclosure here was sufficient for effective use at trial.
 
 
 13
 Ridings also contends that the government did not disclose the past criminal history of Huffman or the deal he made with the government. There is no evidence that Huffman entered into an actual deal. However, his efforts to provide substantial assistance to avoid a mandatory sentence and his cooperation with the police were fully disclosed and explored during direct and cross-examination. Ridings does not say what past criminal history of Huffman's was undisclosed. Presumably, he means Huffman's arrest in October 1988. Ridings' cross-examination of Huffman reveals full knowledge of the circumstances surrounding Huffman's 1988 arrest and his cooperation with the government after his arrest. Finally, Ridings claims that Huffman's statements about feeling threatened by Ridings were "false and slanderous." However, credibility of witnesses is within the sole province of the jury and is not susceptible to review. Pigford v. United States, 518 F.2d 831 (4th Cir.1975).
 
 
 14
 In sum, we find no merit to Ridings' claims. Additionally, because Ridings is unrepresented on appeal, we have independently reviewed the record for any reversible error and find none. Accordingly, we affirm. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.
 
 
 15
 AFFIRMED.
 
 
 
 [1]
 Ridings is proceeding pro se on appeal