**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 98-4452

RAYMOND J. STEWART,
Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
John T. Copenhaver, Jr., District Judge.
(CR-96-123-1)

Submitted: March 2, 1999

Decided: April 12, 1999

Before HAMILTON, NIEMEYER, and WILLIAMS,
Circuit Judges.

_____

Affirmed in part, vacated in part, and remanded by unpublished per
curiam opinion.

_____

**COUNSEL**

John Robert McGhee, Jr., KAY, CASTO, CHANEY, LOVE &
WISE, Charleston, West Virginia, for Appellant. Rebecca A. Betts,
United States Attorney, Miller A. Bushong III, Assistant United
States Attorney, Charleston, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Raymond J. Stewart appeals from his conviction and sentence imposed for conspiring to distribute and possess with intent to distribute methamphetamine, in violation of 21 U.S.C. § 846 (1994). On appeal, he contends that the district court erred by (1) denying his motion to strike two jurors for cause; (2) allowing into evidence testimony concerning drug dealings which preceded the date of the conspiracy as charged in the indictment; (3) allowing into evidence statements of a coconspirator; (4) denying his motion for judgment of acquittal; (5) calculating the base offense level under the Sentencing Guidelines; and (6) allowing the testimony of a government witness who, in his plea agreement, had been offered immunity in exchange for his testimony. Stewart, acting pro se, has filed a number of motions. We deny his motions to relieve counsel, to strike the appeal brief filed by counsel, and to proceed pro se. We deny counsel's motion to withdraw, and we grant Stewart's motion for leave to file a pro se supplemental brief. In his pro se supplemental brief, Stewart argues that the district court erred in denying his motion for judgment of acquittal where all of the evidence against him was introduced from witnesses who received something of value in exchange for their testimony. Stewart also raises the additional issue that it was plain error for the district court to sentence him using the 1997 edition of the U.S. Sentencing Guidelines Manual. Upon review of the issues raised by counsel and by Stewart, we affirm Stewart's conviction, but vacate his sentence and remand for resentencing using the 1994 version of the Sentencing Guidelines.

I.

The federal grand jury returned an indictment charging Stewart with one count of knowingly conspiring to distribute and to possess with intent to distribute methamphetamine. The indictment alleged

2

that the conspiracy occurred from approximately March 1994 to September 1995.

Stewart met Robert Jarvis in late 1992. Around that time, or in early 1993, Jarvis received a gram of methamphetamine through the mail from Richard Roll in California. Jarvis kept half a gram and sold the other half to Stewart for $50. Throughout 1993, Jarvis continued to receive methamphetamine, totaling about two pounds, from Roll. Jarvis fronted to Stewart approximately one and one-half pounds of the methamphetamine he received from Roll.

In January 1994, Jarvis began to obtain methamphetamine in the mail from Anthony Compton. The total amount he received from Compton was about twenty pounds. Jarvis gave Stewart approximately two pounds of the methamphetamine he received from Compton.

Officials learned of Robert Jarvis' activities through the use of a confidential informant. They further learned that Raymond Stewart was one of the local dealers who purchased methamphetamine from Jarvis for redistribution. Stewart redistributed the methamphetamine from Jarvis to Jack Clark, Steve Mullins, Timothy Sigman, and Lisa Jarrett.

Following the presentation of evidence of this activity, the jury found Stewart guilty of the conspiracy charge. The district court subsequently sentenced Stewart to 188 months, followed by a five-year term of supervised release. Stewart timely noted his appeal.

II.

Stewart first challenges the district court's decision to deny his motion to strike two jurors for cause. We review such a decision for an abuse of discretion, affording the district court wide latitude. See Person v. Miller, 854 F.2d 656, 665 (4th Cir. 1988). Where the issue concerns the bias of a juror, special deference is given to the district court's determination of the credibility of the juror's statement as to whether he can be impartial. See Patton v. Yount , 467 U.S. 1025, 1038 (1984).

3

During voir dire, the district court judge asked the members of the jury panel whether they or any member of their immediate families were employed as a law enforcement officer. One juror, Nancy Plantz, responded that she worked for the West Virginia State Police in a data processing and communications position for twenty years and her ex-husband was a West Virginia State Trooper. Plantz stated that she could be fair and impartial notwithstanding her association with the state police. Another juror, Rhonda Dingess, reported that her husband had been a police officer for the City of Chapmanville, West Virginia, for six years. Dingess also stated that she could be fair and impartial notwithstanding her husband's occupation.

Stewart's counsel requested additional voir dire of these two jurors concerning whether they would be biased in favor of law enforcement witnesses, but none was made. Counsel then moved to strike Dingess and Plantz for cause. The district court denied this motion. Stewart's counsel then exercised two preemptory strikes to remove these two jurors from the panel. The district court apparently determined that Dingess and Plantz were credible in their statements that despite their association with law enforcement agencies, they could be fair and impartial. We find no abuse of discretion by the district court in denying Stewart's motion to strike for cause. See United States v. LaRouche, 896 F.2d 815, 830 (4th Cir. 1990) (no per se exclusion for potential jurors with law enforcement associations). Moreover, the district court's failure to conduct additional voir dire as to bias in favor of law enforcement witnesses was harmless. The government presented no law enforcement witnesses on the issue of Stewart's involvement in the conspiracy. The only law enforcement witness was the case agent, whose testimony concerned Stewart's flight and failure to appear for the scheduled trial.

III.

Stewart also challenges the admission of testimony concerning drug dealings which preceded the date of the conspiracy charged in the indictment. The district court is afforded broad discretion in determining whether to admit evidence. Such a decision will not be reversed unless it was the result of an abuse of this discretion. See United States v. Loayza, 107 F.3d 257, 263 (4th Cir. 1997).

4

Three days before the start of the trial, the government filed a "Notice of Federal Rule of Criminal Procedure 404(b) Evidence" informing Stewart's counsel that the government intended to introduce evidence that Stewart began dealing methamphetamine before the March 1994 date charged in the indictment as the beginning of the conspiracy. Although Stewart argued that the notice was untimely and that the evidence was cumulative, irrelevant, and that the probative value was outweighed by the prejudicial effect to Stewart, the district court allowed the evidence. We find no abuse of discretion in this decision. As the government argued, such evidence was not technically of a "prior bad act" but rather furnished part of the context of the crime. See United States v. Smith, 446 F.2d 200, 204 (4th Cir. 1971). Also, the government asserted that the evidence was so intrinsic to the charged offense that it was not admitted to establish bad character. See United States v. Chin, 83 F.3d 83, 87-88 (4th Cir. 1996); see also United States v. Kennedy, 32 F.3d 876, 886 (4th Cir. 1994) (evidence of criminal conduct occurring months before charged conspiracy admissible without recourse to Rule 404(b)).

IV.

Stewart next argues that the district court erred in admitting Lisa Jarrett's testimony about statements made by Linda Adkins. Stewart contends that this constituted inadmissible hearsay. The factual findings as to whether statements are admissible as a co-conspirator's statements under Fed. R. Evid. 801(d)(2)(E), are reviewed for clear error, and the admission of such statements are reviewed for abuse of discretion. See United States v. Blevins, 960 F.2d 1252, 1255 (4th Cir. 1992).

During its case-in-chief, the government called as a witness, Lisa Jarrett, who was originally a named co-defendant in the indictment against Stewart. Jarrett testified concerning her knowledge of Stewart's involvement in the conspiracy. Jarrett testified that she learned that Stewart was involved with methamphetamine from Linda Adkins, who informed Jarrett that she was getting her methamphetamine from Stewart. Over Stewart's hearsay objection, the district court allowed this testimony. The court found that Adkins was a co-conspirator with Stewart during the relevant time period. Therefore, Adkins' statements made in the course of and in furtherance of the

5

conspiracy were not hearsay. This factual determination is not clearly erroneous, and the district court did not abuse its discretion in allowing this evidence. See Blevins, 960 F.2d at 1255.

V.

Stewart's next argument is that the district court erred in denying his motion for judgment of acquittal, in which he asserted that the evidence showed multiple conspiracies, rather than one conspiracy as alleged in the indictment. When reviewing the denial of a motion for acquittal, this court must determine whether, viewing the evidence in the light most favorable to the government, there is substantial evidence to support a finding of guilt beyond a reasonable doubt. See United States v. Stockton, 788 F.2d 210, 218 (4th Cir. 1986); United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982).

While, as Stewart contends, the evidence could support a finding of more than one conspiracy, the evidence also supported a finding of a single conspiracy. Viewing the evidence in the light most favorable to the government, see Tresvant, 677 F.2d at 1021, the district court properly found that the evidence was sufficient to support a finding of guilt on the single conspiracy charged in the indictment. We find no error in this ruling.

VI.

At sentencing, Stewart objected to the sufficiency and the credibility of the evidence used to determine the amount of methamphetamine attributable to him in the presentence report. Stewart also requested that the court use a calculation of weight based on the purity of the methamphetamine rather than the total weight of any mixture. The district court overruled these objections and attributed 3.5 pounds or 1.5876 kilograms of methamphetamine to Stewart for sentencing purposes, resulting in a base offense level of 34. Stewart now argues that the district court erred in overruling his objections.

Jarvis testified that a conservative estimate of the amount of methamphetamine he supplied to Stewart was 3.5 pounds. The district court, at sentencing, found this testimony credible. While Stewart

6

asserted that the amount should be less than that, he failed to state or show what lesser amount should be attributed to him. Further, Stewart's contention that the purity of the methamphetamine should have been used to calculate the amount of methamphetamine was properly dismissed because the sentencing guidelines provide that the greater of the two weights should be used. See USSG§ 2D1.1(c)(3), and note (B) to the Drug Quantity Table. Finding no clear error in the district court's findings as to the amount of methamphetamine attributed to Stewart, see United States v. D'Anjou, 16 F.3d 604, 614 (4th Cir. 1994), we affirm Stewart's sentence.

VII.

During its case-in-chief, the government presented testimony from witnesses who had entered into plea agreements with the United States. Stewart did not object to these witnesses' testimony. Stewart, relying on United States v. Singleton, 144 F.3d 1343 (10th Cir. 1998), now contends that the government offered inducements--the immunity agreements--to these witnesses in exchange for their testimony in violation of 18 U.S.C. § 201(c)(2) (1994). In Singleton, the Tenth Circuit held that any promise made by the government to a witness in exchange for truthful testimony violates § 201(c)(2), and such testimony should be suppressed. 114 F.3d at 1359. Rehearing the case en banc, the Tenth Circuit rejected its initial decision in Singleton. See United States v. Singleton, ___ F.3d ___, 1999 WL 6469 (10th Cir. Jan. 8, 1999) (en banc). Because this court has not addressed whether plea agreements with the United States can violate 18 U.S.C. § 201(c)(2), there is no clear violation of existing law as required for reversal under the plain error standard of review. See United States v. Olano, 507 U.S. 725, 732-36 (1993).

VIII.

In his pro se brief, Stewart also raises a claim under Singleton, arguing that the district court erred in denying his motion for judgment of acquittal where all of the evidence against him was introduced from witnesses who received something of value in exchange for their testimony. Because this court has not addressed this issue, we find no plain error by the district court in failing to apply the rationale of Singleton. See Olano, 507 U.S. at 732-36.

IX.

Stewart's final argument, also raised in his pro se brief, is that the district court committed plain error by sentencing him using the 1997 edition of the U.S. Sentencing Guidelines Manual . Stewart's failure to object during sentencing amounts to a waiver of his right to raise this issue on appeal absent plain error. See Fed. R. Crim. P. 52; United States v. Ford, 88 F.3d 1350, 1355-56 (4th Cir. 1996). To reverse for plain error, this court must "(1) identify an error; (2) which is plain; (3) which affects substantial rights; and (4) which `seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" United States v. Moore, 11 F.3d 475, 481 (4th Cir. 1993) (quoting United States v. Olano, 507 U.S. at 732-36).

The sentencing court should apply the guidelines which are in effect on the date of sentencing. See USSG§ 1B1.11(a); United States v. Hartzog, 983 F.2d 604, 608 (4th Cir. 1993). However, if use of the Guidelines Manual in effect on the date of sentencing would violate the Ex Post Facto Clause, the Manual in effect on the date of the commission of the offense should be used. See USSG § 1B1.11(b)(1). The ex post facto clause prohibits a law that aggravates the crime or inflicts a greater punishment than the law annexed to the crime, when committed. See Miller v. Florida, 482 U.S. 423, 431-32 (1987) (ex post facto clause precludes use at sentencing of more punitive Florida sentencing guideline amendment that took effect after date of offense); United States v. Suarez, 911 F.2d 1016, 1021-22 (5th Cir. 1990) (ex post facto clause prevented application of amended § 1B1.3 to defendant whose offense occurred prior to the effective date of the amendment which increased punishment).

Effective November 1, 1997, section 2D1.1 of the guidelines was amended to increase penalties for methamphetamine trafficking offenses. The increase was accomplished by reducing by half the quantity of methamphetamine which corresponded to each offense level in the Drug Quantity Table. This change resulted in the 1.5876 kilograms of methamphetamine attributable to Stewart falling within offense level 34, where prior to the amendment, this quantity resulted in offense level 32. Compare U.S. Sentencing Guidelines Manual § 2D1.1(c)(3) (1997) with U.S. Sentencing Guidelines Manual § 2D1.1(c)(4) (1994). This error seriously affects Stewart's substan-

8

tial rights because the higher offense level caused Stewart to be sentenced to a longer prison term. Also, sentencing a defendant under the wrong guideline range affects the fairness, integrity, and public reputation of judicial proceedings. Because Stewart's sentence is improper, resentencing is necessary. See Olano , 507 U.S. at 732; see also Ford, 88 F.3d at 1356. Accordingly, we vacate Stewart's sentence and remand for resentencing. On remand, the district court should apply the 1994 version of the guidelines, including the distinction in the guidelines between d-methamphetamine and l-methamphetamine, which existed prior to the November 1, 1995 amendments.

X.

In conclusion, we affirm Stewart's conviction, but vacate his sentence and remand for resentencing under the version of the guidelines in effect on the date of the commission of the offense. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED IN PART; VACATED IN PART; AND REMANDED

9