910 F.Supp. 535 (1995)
UNITED STATES of America, Plaintiff,
v.
Rafael G. PEÑA, Defendant.
Civil Action No. 95-20051-03-EEO.
United States District Court, D. Kansas.
December 21, 1995.
*536 Kurt D. Marquart, Kansas City, MO, Stephen G. Ralls, Tucson, AZ, for Rafael G. Peña.
Kim Martin Fowler, Office of United States Attorney, Kansas City, KS, for U.S.

MEMORANDUM AND ORDER
EARL E. O'CONNOR, District Judge.
This matter is before the court on the motion of defendant Rafael G. Peña to dismiss the indictment based on double jeopardy violations (Doc. # 187). As an alternative to dismissal, the defendant requests an evidentiary hearing, and an order requiring the government to disclose certain enumerated "evidentiary items." The government has responded and opposes the motion. As set forth below, the defendant's request for a dismissal of the indictment is denied. Defendant's request for an evidentiary hearing is granted. Defendant's request for an order requiring the government to produce certain items is denied.

I. Factual Background

In August of 1994, the Lenexa Police Department began an investigation of a marijuana *537 distribution organization operating within the Johnson County, Kansas, area. As the investigation began to unfold, it became apparent that the organization had ties to other states. Based upon the wide-reaching nature of the organization, agents of the United States Customs Service, Drug Enforcement Administration, and law enforcement officers and agents from various states were enlisted to assist in the investigation.
On June 12, 1995, defendant was arrested in Kansas City, Missouri, for conspiracy to sell marijuana. At the time of his arrest, the United States Customs Service seized from defendant a 1990 Wabash National box trailer, a 1989 Kenworth tractor, a 1979 Great Dane low boy trailer, and certain monies. On June 13, 1995, the State of Kansas charged defendant in the District Court of Johnson County, Kansas, with conspiracy to distribute or sell marijuana. On June 23, 1995, the State of Kansas dismissed its case against the defendant. That same day, the defendant was charged in the United States District Court for the District of Kansas with conspiracy to possess with intent to distribute approximately 1,000 pounds of marijuana. On June 25, 1995, the Grand Jury for the District of Kansas indicted the defendant on the following charges: (1) conspiracy to possess with intent to distribute marijuana in excess of 100 kilograms; (2) possession with intent to distribute more than 100 kilograms of marijuana; (3) use of a communications facility to distribute more than 100 kilograms of marijuana; and (4) interstate travel with intent to promote an unlawful activity.
On June 20, 1995, the United States Department of the Treasury, through the United States Customs Service, served the defendant with a document entitled "Notice of Seizure and Information for Claimants." The property described in the notification included defendant's Kenworth tractor, low boy trailer, and box trailer. Thereafter, defendant served the United States Customs Service with a "Petition for Remission or Mitigation of Forfeiture," seeking the return of all items listed in the notification.
On August 16, 1995, the United States Customs Service informed defendant that his Petition for Remission or Mitigation had been forwarded to Assistant District Attorney Sarah Welsh of the Johnson County District Attorney's Office, because U.S. Customs no longer had custody of the items seized. The Customs Service advised defendant that the box trailer, Kenworth tractor, and low boy trailer had been turned over to the Lenexa Police Department.
On August 24, 1995, the Kansas Department of Revenue notified the defendant that, pursuant to K.S.A. 79-5201 et seq., the Director of Taxation had assessed against the defendant (1) taxes of $158,900.00 on the marijuana; and (2) a penalty in the sum of $158,900.00 for failure to have Kansas drug tax stamps affixed to the marijuana. On October 24, 1995, defendant entered into a settlement with the Kansas Department of Revenue regarding the defendant's tax liability. Pursuant to the settlement, defendant agreed to forfeit to the Department of Revenue the 1979 Great Dane low boy trailer, the 1989 Kenworth tractor, $210.00 in money orders, and the sum of $273.75, in full and final satisfaction of the $317,800.00 tax assessment against him.
On September 25, 1995, the State of Kansas filed a "Notice of Pending Forfeiture" in the District Court of Johnson County, Kansas. The Notice advised defendant that the 1990 Wabash box trailer had been seized for forfeiture and was pending forfeiture to the Lenexa Police Department pursuant to the Kansas Standard Asset Seizure and Forfeiture Act. Defendant then began settlement negotiations with the State of Kansas. As a result of the settlement negotiations, defendant and the State of Kansas entered into a "Stipulated Forfeiture Settlement and Release," wherein defendant agreed to forfeit the 1990 Wabash box trailer, $3,410.00 in U.S. Currency, and 2,130 Nuevos Pesos to the Lenexa Police Department. The forfeiture settlement was approved by the Honorable Steve Leben of the District Court of Johnson County, Kansas on October 30, 1995, and memorialized in a journal entry entitled Judgment of Forfeiture on November 9, 1995.

II. Discussion

Defendant contends that the above-described acts of forfeiture constitute "punishment" *538 for his alleged participation in the identical criminal activity that is the subject of the instant criminal prosecution. Thus, defendant maintains, his criminal prosecution in federal court following the civil forfeitures constitutes a successive effort to impose punishment for the same offense, in violation of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. Accordingly, under defendant's analysis, the instant criminal indictment must be dismissed.
Defendant relies upon a trilogy of recent Supreme Court cases, specifically United States v. Halper, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), Austin v. United States, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), and Department of Revenue of Montana v. Kurth Ranch, ___ U.S. ___, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994). In Halper, the Supreme Court focused on the "multiple punishment" component of the Double Jeopardy Clause and held that some sanctions or penalties, even if labelled "civil" and imposed in civil proceedings, may still constitute "punishment" for the purpose of double jeopardy analysis. See Halper, 490 U.S. at 440-48, 109 S.Ct. at 1897-1902. The Court adopted the following test for determining whether a nominally civil sanction constituted "punishment" for double jeopardy purposes: "[A] civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term." Id. at 448, 109 S.Ct. at 1902.
In Austin v. United States, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), the Court considered the question whether the Excessive Fines Clause of the Eighth Amendment applied to forfeitures of property under 21 U.S.C. §§ 881(a)(4) and (a)(7). In determining that the Excessive Fines Clause did apply to forfeitures under those statutes, the Court specifically applied the Halper test to determine whether a civil forfeiture under 21 U.S.C. §§ 881(a)(4) and (a)(7) constituted "punishment." The Supreme Court concluded that those provisions did in fact impose punishment under the Halper test. Id. at ___ - ___, 113 S.Ct. at 2811-12.
Finally, in Department of Revenue of Montana v. Kurth Ranch, ___ U.S. ___, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994), after defendants pled guilty to drug charges in state court, the Montana Department of Revenue attempted, in a separate proceeding, to collect a state tax imposed on the possession and storage of dangerous drugs. The Bankruptcy Court held that the assessment on harvested marijuana was a form of double jeopardy. The United States Supreme Court affirmed, and held that the proceeding Montana initiated to collect a tax on the possession of drugs was the functional equivalent of a successive criminal prosecution that placed the defendants in jeopardy a second time for the same offense. Id. at ___, 114 S.Ct. at 1948.
After careful consideration, we have determined that at this stage we need not engage in an analysis of the broad issues implicated by these Supreme Court cases, to wit: whether the forfeitures were solely remedial in nature; whether the civil penalty exceeded the damages and expenses incurred by the government; and whether the legislative history of the statutes authorizing the forfeitures demonstrates a legislative intent to impose punishment. For purposes of the motion now before us, we will assume that the civil forfeitures of defendant's property constitute punishment for purposes of Double Jeopardy Clause analysis. We are persuaded by the reasoning of the Second Circuit in United States v. All Assets of G.P.S. Automotive Corp., 66 F.3d 483 (1995), that such issues are to be considered if, and only if, we conclude that the dual sovereignty doctrine does not dispose of the double jeopardy contentions of defendant. Id. at 493.
In concluding that we need not at this time enter into an analysis or allow defendant discovery on the issue of whether the civil forfeiture of defendant's property constitutes punishment for double jeopardy purposes, the court reasons as follows: If, after an evidentiary hearing on the limited issue of whether the federal government was operating as a tool of the state, or was engaged in a sham prosecution for the state, we determine *539 that the facts presented do not justify application of the Bartkus exception, then the dual sovereignty doctrine would apply to allow for two punishments, one by the state government and one by the federal government. See United States v. Lanza, 260 U.S. 377, 43 S.Ct. 141, 67 L.Ed. 314 (1922). Thus, any consideration of what constitutes punishment would be immaterial. The court finds this approach furthers the interests of judicial economy and efficiency. Thus, we turn our attention to the dual sovereignty doctrine.
The Supreme Court has held repeatedly that successive prosecutions based upon the same conduct are permissible if brought by separate sovereigns. See Heath v. Alabama, 474 U.S. 82, 88, 106 S.Ct. 433, 437, 88 L.Ed.2d 387 (1985); United States v. Wheeler, 435 U.S. 313, 317, 98 S.Ct. 1079, 1083, 55 L.Ed.2d 303 (1978); United States v. Lanza, 260 U.S. 377, 382, 43 S.Ct. 141, 142, 67 L.Ed. 314 (1922). The "dual sovereignty" doctrine is founded upon the common-law conception of crime as an offense against the sovereignty of the government. As stated in United States v. Lanza, 260 U.S. at 382, 43 S.Ct. at 142:
[E]ach government in determining what shall be an offense against its peace and dignity is exercising its own sovereignty, not that of the other.
It follows that an act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each.
Consequently, trial in a state court does not bar trial in a federal court for the same criminal conduct. See Abbate v. United States, 359 U.S. 187, 194, 79 S.Ct. 666, 670, 3 L.Ed.2d 729 (1959).
The government contends the federal prosecution does not violate the Double Jeopardy Clause because the dual sovereignty doctrine applies. Peña acknowledges the existence of the dual sovereignty doctrine, and recognizes the obstacle that the doctrine poses to his claim. He maintains, however, that the instant case falls within an exception to the dual sovereignty doctrine, first articulated in Bartkus v. Illinois, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959). In Bartkus, the Supreme Court noted that successive state and federal prosecutions are constitutionally permissible because every citizen of the federal government is also a citizen of a state, and both sovereigns have authority to punish individuals for infractions of the law. Id. at 131-32, 79 S.Ct. at 682-83. The court observed that the successive prosecutions before it did "not sustain a conclusion that the state prosecution was a sham and a cover for a federal prosecution, and thereby in essential fact another federal prosecution." Id. at 124, 79 S.Ct. at 678.
A number of courts since the Bartkus decision have inferred from that case that collusion between federal and state authorities could bar the second prosecution. See United States v. Moore, 822 F.2d 35, 38 (8th Cir.1987); United States v. Aboumoussallem, 726 F.2d 906, 910 (2d Cir.1984); United States v. Aleman, 609 F.2d 298, 309 (7th Cir.1979), cert. denied, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980); United States v. Liddy, 542 F.2d 76, 79 (D.C.Cir. 1976). But see United States v. Brocksmith, 991 F.2d 1363, 1366 (7th Cir.), cert. denied, ___ U.S. ___, 114 S.Ct. 569, 126 L.Ed.2d 468 (1993) (questioning whether such an exception exists); United States v. Patterson, 809 F.2d 244, 247 n. 2 (5th Cir. 1987) (same).
The Tenth Circuit alluded to the existence of the Bartkus exception in United States v. Raymer, 941 F.2d 1031 (10th Cir.1991), wherein the court stated: "A possible exception to the dual sovereignty rule might exist where a federal or state prosecution was merely a tool manipulated by the other sovereign to revive a prosecution barred on federal constitutional grounds." Id. at 1037 (citing Bartkus, 359 U.S. at 123-24, 79 S.Ct. at 678-79). In United States v. Fuentes, 978 F.2d 1268, 1992 WL 314097 (10th Cir.1992), the Tenth Circuit more explicitly recognized the Bartkus exception in the following language: "To avoid application of the dual sovereignty doctrine, a defendant must prove that one sovereign so dominated the actions of the other that the latter was not acting independently." Id. at *2 (citing Raymer, 941 F.2d at 1037).
Peña invokes the Bartkus exception, and claims that the federal prosecution is *540 actually a "sham" and a "cover" for an otherwise impermissible second state prosecution. Peña alleges that "a number of factors indicate that the Government may be functioning at the direction of the State of Kansas, or visa [sic] versa." In support of his position, Peña first points to the fact that Sarah Welch, Assistant District Attorney for the State of Kansas, an attorney involved in the state court proceedings, was cross-designated as a Special Assistant United States Attorney for purposes of the federal prosecution.
The Tenth Circuit has recognized that the cross-designation of a prosecutor alone is not sufficient to justify application of the Bartkus exception to the dual sovereignty doctrine. In United States v. Raymer, 941 F.2d 1031 (10th Cir.1991), the prosecutor in defendant's state case was later designated a Special Assistant United States Attorney. In the prosecutor's federal capacity, he was instrumental in obtaining a federal indictment against the defendant and subsequently arranging for the dismissal of the state case in lieu of federal prosecution. On appeal, the defendant contended that the district court erred in not dismissing the federal indictment on double jeopardy grounds as a sham prosecution. Id. at 1036. In rejecting this argument, the Tenth Circuit observed: "As an initial matter, we question whether these factors alone [same witnesses involved in the federal prosecution as in the state case, and same prosecutor's heavy involvement in both cases] could ever establish a sham prosecution given our holding in Padilla which involved the same state prosecutor and the same state evidence at the federal level." Id. at 1039.
Every circuit to date that has considered this issue has held that the cross-designation of a state district attorney as a federal attorney to assist or even to conduct a federal prosecution does not by itself bring the case within the Bartkus exception. See United States v. Figueroa-Soto, 938 F.2d 1015, 1019 (9th Cir.1991), cert. denied, 502 U.S. 1098, 112 S.Ct. 1181, 117 L.Ed.2d 424 (1992); United States v. Perchitti, 955 F.2d 674, 677 (11th Cir.1992); United States v. Paiz, 905 F.2d 1014, 1024 (7th Cir.1990), cert. denied, 499 U.S. 924, 111 S.Ct. 1319, 113 L.Ed.2d 252 (1991); United States v. Safari, 849 F.2d 891 (4th Cir.), cert. denied, 488 U.S. 945, 109 S.Ct. 374, 102 L.Ed.2d 363 (1988). But cf. United States v. Belcher, 762 F.Supp. 666 (W.D.Va.1991).[1] Indeed, the Bartkus opinion itself explicitly approved of cooperation between federal and state authorities: "[The record] establishes also that federal officials acted in cooperation with state authorities, as is the conventional practice between the two sets of prosecutors throughout the country." Bartkus, 359 U.S. at 123, 79 S.Ct. at 678. Therefore, we conclude that the mere fact that Sarah Welsh, a state prosecutor, was cross-designated to assist in the instant federal prosecution of defendant is insufficient as a matter of law to support application of the Bartkus exception.
The court finds United States v. Bernhardt, 831 F.2d 181 (9th Cir.1987), on point and well-reasoned. There, the court determined that a federal prosecution is not a sham or cover for a barred state prosecution where "sufficient independent federal involvement" exists. Id. at 183. The court remanded the case to the district court and specifically suggested that the lower court consider whether an evidentiary hearing would aid it in the fact-finding process. Id.
In United States v. Russotti, 717 F.2d 27 (2d Cir.1983), cert. denied, 465 U.S. 1022, 104 S.Ct. 1273, 79 L.Ed.2d 678 (1984), the appellants argued that the federal government *541 was so deeply involved in the state murder prosecution so as to preclude application of the dual sovereignty rule. Id. at 30. At a minimum, appellants contended, they were entitled to an evidentiary hearing on the point. The appellate court concluded that the decision of the district court to deny appellants' motion without a hearing was well within its discretion. Id. at 31. In arriving at this conclusion, the Second Circuit relied heavily on the uncontroverted affidavit of the Special Assistant United States Attorney, which described in detail the limited federal involvement in the state murder trial. The court stated that "the uncontroverted affidavit ... obviated whatever necessity there may have been for conducting a hearing." Id. Here, however, the government has not seen fit to provide us with any such affidavit of Special Assistant United States Attorney Sarah Welch or of Assistant United States Attorney Kim Fowler, which may have "obviated the need for conducting a hearing."
Peña suggests that, indeed, more than "mere cooperation" may exist in this case. In his brief, defendant cites United States v. All Assets of G.P.S., 66 F.3d 483 (2nd Cir. 1995). There, the Second Circuit concluded that the district court had failed to consider a factor unique to forfeiture cases, and that such failure required remand of the case: "without further fact-finding, we cannot exclude the possibility that the Bartkus exception might apply." Id. at 495. This additional factor concerned the allocation of the forfeiture proceeds between state and federal authorities. In G.P.S., defendant alleged at oral argument that the state would receive a very large percentage of whatever forfeiture proceeds were derived from the federal action. The court stated:
If a state prosecutes to conviction and then prevails upon the federal prosecutor to deputize a state district attorney to bring a forfeiture, ostensibly in the name of the United States, but for the sole benefit of the state, the principles behind the Bartkus exception would be strongly implicated. In such a case, the federal government would have no interest in the forfeiture proceeding, and would be serving simply as a "tool" for the advancement of the state's interest. The Bartkus exception thus seems especially germane whenever the first prosecuting authority is to receive a disproportionate share of the proceeds of a subsequent forfeiture action to be brought by a different sovereign.
Id. at 496. A similar concern might arise where the second prosecuting authority is to receive a disproportionate share of the proceeds of a previous forfeiture action brought by a different sovereign.
The court finds, under the facts and circumstances of this case, that the issue whether the federal prosecution was merely a "sham and cover" for a state prosecution cannot be adequately resolved without additional fact-finding. Consequently, the court orders that an evidentiary hearing on the issue be held on January 18, 1996, at 9:30 a.m. See United States v. Russotti, 717 F.2d 27, 31 (2d Cir.1983) (district court has discretion to conduct hearing on applicability of Bartkus exception). The court, however, would remind defendant that the burden of establishing that state officials are controlling or manipulating the federal processes is substantial: the defendant must demonstrate that the federal officials had little or no independent volition in the federal proceedings. See United States v. Liddy, 542 F.2d 76, 79 (1976).
As to Peña's request for certain court-ordered discovery (specifically enumerated as requests (1)-(14) in defendant's brief), the court finds that such requests should be denied for the following reasons:
First, many of defendant's discovery requests seek documents or other evidence which would tend to prove whether the civil forfeiture constitutes punishment under the Halper/Austin/Kurth Ranch analysis. Proof of that issue is unnecessary here, where the court has assumed for purposes of this motion that the civil forfeitures did constitute punishment. See supra, 538.
Second, the government contends that each of defendant's enumerated requests is overbroad and unduly burdensome. We agree. Most of defendant's evidentiary requests employ the term "any and all evidence;" courts have held that such term is an indicia of a fishing expedition. See United *542 States v. Jackson, 155 F.R.D. 664, 668 (D.Kan.1994). Moreover, defendant's requests seek a sweepingly broad array of written and oral communication, which fail to sufficiently identify what is sought. Courts require a certain degree of specificity in order to ensure that the opposing party is provided with enough knowledge about what documents are being requested so as to lodge any objections on relevancy or admissibility grounds. See id. at 667 (citing Black v. Sheraton Corp. of America, 564 F.2d 531, 545 (D.C.Cir.1977)). As presently posed, defendant's requests place the onus on the government to determine what defendant is seeking, and what is relevant.
In resolving the applicability of the Bartkus exception, other courts have allowed factfinding on specifically-tailored areas of inquiry. For example, in United States v. All Assets of G.P.S., 66 F.3d at 496, the court held that additional fact-finding was necessary on the following:
Without more details concerning the financial arrangements and the division of labor and proceeds between the two sovereigns, we cannot at this stage reject the contention by GPS and Phil Schaffer that the federal government was merely acting as a "tool" for the state. Specifically, we do not think we can resolve the applicability of the Bartkus exception without additional fact-finding concerning the expected proceeds of the forfeiture, the extent, cost, and value of the labor and services provided by state officials in the federal action, and the bargain between federal and state authorities as to the split of the proceeds.
Once the District Court has found these facts, it should in their light, reconsider the other factors, e.g., who initiated the forfeiture action and what was the role of the deputized state prosecutor  that it properly held did not by themselves implicate the Bartkus exception. It must then conclude whether, taken all together, these factors amount to appropriate cooperation or to inappropriate use of one sovereign by another.
The Tenth Circuit, in United States v. Raymer, 941 F.2d at 1039, indicated that the following factors could be considered in evaluating the extent of independent federal involvement: (1) whether the federal prosecution involved substantial investigation separate and apart from the state charges; (2) whether the federal designation of a state prosecutor was appropriate to vindicate the substantial federal interest implicated by the scope of the alleged criminal activity; (3) whether the federal government paid for the cost of prosecution; (4) whether lawyers from the Justice Department and the local U.S. Attorney's office worked on the case; and (5) whether any witnesses were unique to the federal prosecution. See also United States v. Bernhardt, 831 F.2d at 183 (fact several Assistant United States Attorneys may have worked on the Bernhardt prosecution indicated involvement of the federal authorities that may be sufficient to remove case from the Bartkus exception). In view of the specific factors which the foregoing courts have considered, we find defendant's requests overbroad and insufficiently tailored to elicit evidence relevant to the limited issue of the applicability of the Bartkus exception.
We hold that defendant may present evidence regarding the factors outlined in Raymer, as well as those the Second Circuit articulated in All Assets of G.P.S., with one exception: The court is of the view that the cost and value of the labor and services provided by state officials in the federal action, a factor recognized by the court in All Assets of G.P.S., is simply not relevant or material to the court's determination of whether the Bartkus exception applies. The amount of money spent by the state in the federal investigation has no direct bearing on the ultimate question of whether the state controlled the federal investigation. The court's determination to exclude from consideration the foregoing factor, however, does not foreclose introduction of evidence regarding the extent of the labor and services provided by state officials. Defendant may present evidence regarding the extent of labor and services without getting into a cost analysis.
Third, defendant simply has not shown that the procedures available to him, pursuant to Federal Rule of Criminal Procedure 17(a) and (c) regarding subpoena powers, is *543 inadequate to obtain the information that he seeks. Defendant is free to use the subpoena powers afforded him through Federal Rule of Criminal Procedure 17.
IT IS THEREFORE ORDERED that defendant Rafael G. Peña's motion to dismiss based on double jeopardy grounds (Doc. # 187) is denied.
IT IS FURTHER ORDERED that Peña's request for certain court-ordered discovery is denied.
IT IS FURTHER ORDERED that Peña's request for an evidentiary hearing is granted. An evidentiary hearing is set for January 18, 1996, at 9:30 a.m.
NOTES
[1] In Belcher, the court held that the cross-designation of the state attorney who conducted an initial state trial amounted to a "breakdown in federalism" and hence made a subsequent federal prosecution "simply `a sham and cover' for the first." Id., 762 F.Supp. at 670-71. Peña, while acknowledging that "the majority of courts have found that cross-designation does not, in and of itself, run afoul of Double Jeopardy," points to Belcher as an example where a court did indeed apply the Bartkus exception based largely on the cooperation between state and federal officials. Id. We note that Belcher was decided in the different context of collateral estoppel. Moreover, that case was not appealed, and its holding in this regard appears to be an anomaly insofar as we are unaware of any other court that has reached a similar decision. Thus, the court declines to follow the holding of Belcher and instead chooses to follow the decisions of the Tenth Circuit and the several other circuits that have considered this issue.