**UNITED STATES of America, Plaintiff,**

v.

**Marshall Edward BELCHER and Patrick Lee Belcher, Defendants.**

**Cr. No. 89–00156–B.**

United States District Court,
W.D. Virginia,
Big Stone Gap Division.

March 13, 1991.

Julie Campbell, Asst. U.S. Atty., Abingdon, Va. Timothy J. McAfee, Commonwealth's Atty. Wise County, Va., for plaintiff.

Fred Rowlett, Abingdon, Va., for Marshall Belcher.

Gregory D. Edwards, Jonesville, Va., for Patrick Belcher.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, Senior District Judge.

### FACTUAL AND PROCEDURAL BACKGROUND

Tim McAfee ("McAfee") is the Commonwealth's Attorney for Wise County, Virginia. He is also a Special Assistant United States Attorney for the Western District of Virginia. During 1988 and 1989, McAfee, as Commonwealth's Attorney, unsuccessfully prosecuted the brothers Belcher, Marshall Edward ("Eddie") and Patrick Lee ("Patrick"), in the Circuit Court of Wise County, Virginia.

The State prosecutions proceeded as follows: McAfee secured separate, identical, two-count indictments against Eddie and Patrick for manufacturing marijuana and using a firearm in the commission of a felony (i.e., manufacturing marijuana). McAfee proceeded against the brothers separately. For some reason, State officials destroyed the alleged marijuana the brothers were accused of manufacturing. The State officials performed no tests of any sort on the alleged marijuana prior to destroying it.

Seizing on the fact of the alleged marijuana's destruction, Patrick moved to have his indictment dismissed based, *inter alia*, on a State law that prohibits the destruction of evidence "until all rights of appeal have been exhausted." Va.Code Ann. § 18.2–253 (Supp.1990). The State court held a hearing where both Patrick and McAfee were heard. Following the hearing, the Honorable J. Robert Stump, Circuit Court Judge of Wise County, Virginia, issued an opinion and order dismissing the indictment against Patrick. Judge Stump's order stated that "[t]his cause came to be heard on defendant's motion to dismiss the indictment for lack of due process to the defendant.... This court orders that this indictment be dismissed and the case be filed among the ended causes." McAfee sought to appeal the State court's dismissal of the indictment, but his appeal was not timely and the dismissal stood.

Eddie waited until the beginning of his trial to raise the issue of the destroyed plants, but the State court ruled that his motion was untimely. For reasons not material here, McAfee nolle prossed the second (firearms) count in the indictment, and Eddie was convicted of the first count of manufacturing marijuana. Eddie moved the State court for a new trial and the motion was granted on grounds unrelated to the destroyed plants. McAfee nolle prossed the indictment against Eddie, then secured another indictment against him charging him with manufacturing marijuana and conspiring to manufacture marijuana. Eddie, relying on the fact of the alleged marijuana's destruction, then sought the dismissal of the second indictment. However, the State court delayed ruling on Eddie's motion until it could conduct an evidentiary hearing.

While Eddie's motion was pending, McAfee, in his federal guise, drafted a three-count indictment against both Eddie and Patrick. In separate letters to Assistant United States Attorney Jerry Kilgore and to former United States Attorney John Perry Alderman, McAfee sought their support for this indictment. In his letter to Kilgore, McAfee indicated that he expected the State court to dismiss the indictment against Eddie. In both letters, McAfee indicated his willingness to handle the prosecution of the Belchers. After learning that the United States Attorney's office would submit his indictment to the federal grand jury, McAfee moved to nolle pross the indictment pending against Eddie in State court. Over Eddie's objection, the State court granted McAfee's motion on December 5, 1989.

A federal grand jury returned the indictment McAfee prepared as a true bill on December 15, 1989. This is the indictment now pending before the court. It charges that the Belchers conspired to manufacture and possess marijuana with the intent to distribute the marijuana, that the Belchers manufactured marijuana, and that the Belchers used or carried a firearm in relation to a drug-trafficking crime.

Eddie argues here that the federal indictment should be dismissed because of vindictive and selective prosecution, and because of double jeopardy, all in violation of his fifth amendment rights. Patrick joins his brother's motion.

## ANALYSIS

### I. DOUBLE JEOPARDY

At the outset, it is necessary to clear away several of the arguments the brothers make. It is clear that double jeopardy in its most stringent sense is simply not an issue here. (The collateral estoppel component of the Double Jeopardy clause is discussed below in Part IV.) A defendant is not placed in jeopardy until a jury is empaneled and sworn, *Crist v. Bretz,* 437 U.S. 28, 38, 98 S.Ct. 2156, 2162, 57 L.Ed.2d 24 (1978), or, if there is a bench trial, until the first witness is sworn, *id.* at 37, n. 15, 98 S.Ct. at 2162, n. 15. Thus Patrick, who achieved a dismissal of his indictment long before trial, was never in jeopardy, and has no former jeopardy argument to make here. Even though Eddie was convicted, he also has no former jeopardy argument, for his own appeal nullified his conviction. "The general rule is that the [Double Jeopardy] Clause does not bar reprosecution of a defendant whose conviction is overturned on appeal." *Justices of Boston Mun. Court v. Lydon,* 466 U.S. 294, 308, 104 S.Ct. 1805, 1813, 80 L.Ed.2d 311 (1984).

### II. SELECTIVE PROSECUTION

It is also clear that the brothers' selective prosecution argument has no merit. Prosecutors have a " 'broad discretion' as to whom to prosecute." *Wayte v. United States,* 470 U.S. 598, 607, 105 S.Ct. 1524, 1530, 84 L.Ed.2d 547 (1985). "In order to establish selective prosecution a defendant must show that the government was motivated by a discriminatory purpose with a resulting discriminatory effect." *United States v. Richardson,* 856 F.2d 644, 647 (4th Cir.1988) (citing *United States v. Greenwood,* 796 F.2d 49, 52 (4th Cir.1986)). Prosecutions based on " 'race, religion, or other arbitrary classification' " or those based on "the exercise of protected statutory and constitutional rights" are most likely to be deemed selective prosecutions. *See Wayte,* 470 U.S. at 608, 105 S.Ct. at 1531. It is true that the brothers used their constitutional and statutory rights in successfully fighting the State indictments. And, it appears that they are among the first that McAfee has attempted to prosecute using his recently-acquired powers as a Special Assistant United States Attorney. However, the mere fact that McAfee continues to prosecute them, albeit in a different forum, does not mean that the prosecution is selective. Instead, it appears that McAfee is simply attempting to use a weapon only recently added to his prosecutorial armory. Were he to be successful, it is likely that he would use this weapon against any subsequent similarly-situated defendants. There is no selective prosecution here.

### III. VINDICTIVE PROSECUTION

In Eddie's case, the claim of vindictive prosecution has merit. Eddie was tried and convicted of a single count of manufacturing marijuana. Now, after successfully appealing that conviction, he faces a federal indictment charging him with conspiracy, manufacturing marijuana, and using a firearm in the pursuit of his alleged criminal deeds. Once a defendant has successfully appealed a conviction, a prosecutor who retries that defendant may not in the subsequent trial increase the severity of the charge against the defendant. *United States v. Johnson,* 537 F.2d 1170, 1173 (4th Cir.1976). Since the preeminent prosecutor here (McAfee) is the same one as in the first prosecution, the court sees no reason for the *Johnson* rule not to apply even though the first prosecution

was in State court. Thus, McAfee cannot try Eddie for anything more than a single count of manufacturing marijuana. The claim of vindictive prosecution does Patrick no good, however, for vindictive prosecution turns on a *convicted* defendant's exercise of the right of appeal. *See Blackledge v. Perry*, 417 U.S. 21, 27–29, 94 S.Ct. 2098, 2102–03, 40 L.Ed.2d 628 (1974); *Johnson*.

## IV. COLLATERAL ESTOPPEL

■ It is crucial to note that the "[collateral estoppel] aspect of the [Double Jeopardy] clause is implicated by the *pretrial disposition* of a prior case if an ultimate issue in the second prosecution was conclusively litigated and necessarily determined as part of the judgment entered in the first case." *United States v. Blackwell*, 900 F.2d 742, 745 (4th Cir.1990) (emphasis added). As the facts set out earlier show, such a "pretrial disposition of a prior case" has occurred in Patrick's case. That is, the court feels that the issues arising from the destruction of the alleged marijuana were "conclusively litigated and necessarily determined" by, respectively, Judge Stump's hearing and order. Moreover, the legal ramifications flowing from the State officials' destruction of the alleged marijuana are obviously "ultimate issue[s]" in the present prosecution. Therefore, the court finds that, were this case pending before a Virginia court, it would have to be dismissed on collateral estoppel grounds.

Since this case is pending in a federal court, the United States normally would not be bound by the collateral estoppel effect of a prior State court proceeding. *United States v. Smith*, 446 F.2d 200, 202 (4th Cir.1971) ("The federal government is neither the same as nor in privity with the State [sic] of Virginia and therefore is not barred from relitigating facts resolved in defendant's favor in the former prosecu-

tion."). By its terms, however, the *Smith* formulation is founded on the theory of dual sovereignty. There is

> [a] narrow exception to the 'dual sovereignty' doctrine, carved out in *Bartkus v. Illinois*, [359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959)], [which] bars a second prosecution where one prosecuting sovereign can be said to be acting as a 'tool' of the other ..., or where the second prosecution amounts to a 'sham and a cover' for the first....

*United States v. Aboumoussallem*, 726 F.2d 906, 910 (2d Cir.1984). As the court will show, this narrow exception is wide enough to cover the situation here.

After announcing the rule *Aboumoussallem* quotes, the *Bartkus* Court offered little explicit guidance for applying the rule to future cases. However, the court finds it instructive that a substantial amount of Justice Frankfurter's opinion in *Bartkus* is devoted to justifying the notion of dual sovereignty as an aspect of federalism. *Id.*, 359 U.S. at 128–139, 79 S.Ct. at 680–686.[1] The importance of federalism to the reasoning in *Bartkus* is reflected in Justice Black's dissent, which attacks the idea of dual sovereignty and Justice Frankfurter's reliance on federalism to justify dual sovereignty. *Id.* at 155–164, 79 S.Ct. at 697–702. From all this, the court concludes that the sketchy provisions *Bartkus* announced (one sovereign acting as a tool of the other; one prosecution serving as a sham or cover for another) are best understood and applied in a situation where the principles of federalism are blurred and "the power of centralized government" works to deprive a citizen of fundamental rights.

The facts show that McAfee has the ability to function (and has functioned) as a prosecutor at both the State and federal levels in this case. The kind of power McAfee possesses here is inconsistent with

---

1. Note, for example, the following passage:
   Some recent suggestions that the Constitution was in reality a deft device for establishing a centralized government are not only without factual justification but fly in the face of history. It has more accurately been shown that the men who wrote the Constitution as well as the citizens of the member States of the Con-
   federation were fearful of the power of centralized government and sought to limit its power.... Time has not lessened the concern of the Founders in devising a federal system which would likewise be a safeguard against arbitrary government.
   *Id.* at 137, 79 S.Ct. at 685–686.

the concepts of federalism implicit in the Constitution:

> [The notion of dual sovereignty] rest[s] on the basic structure of our federal system, in which States and the National Government are separate political communities. State and Federal Governments '[derive] power from different sources,' each from the organic law that established it.... Each has the power, inherent in any sovereign, *independently* to determine what shall be an offense against its authority and to punish such offenses, and in doing so each 'is exercising its own sovereignty, not that of the other.'

*United States v. Wheeler*, 435 U.S. 313, 320, 98 S.Ct. 1079, 1084, 55 L.Ed.2d 303 (1978) (emphasis added) (citations omitted). In fact, it seems to the court that if the same prosecutor simultaneously derives power from both a State and the federal government, then the whole underpinning of federalism is destroyed. The fact that the two sovereigns have essentially pooled their powers in one prosecutor strongly suggests to the court that in reality there are no longer two sovereigns at work. Instead, the pooling of prosecutorial power effectively creates one "super sovereign," i.e., a unitary government. Thus, a central government is actually at work here, not a federal government.[2]

The unique concept of dual sovereignty arises from the federal system under which State governments and the federal government coexist. As *Wheeler* makes clear, criminal justice under this system proceeds on the assumption that the federal government and State governments have their own decision makers who arrive at independent judgments as to the use of the awesome power they possess over who, when and how to prosecute.[3] The court believes that federalism does not contemplate the uniting of these awesome powers in one person. Indeed, it was precisely such aggregations of power that the founding fathers sought to avoid when they established a federal system of government via the Constitution. *Bartkus*, 359 U.S. at 137, 79 S.Ct. at 685. Given the extreme emphasis on federalism in *Bartkus* and the apparent breakdown of federalism here, the court is forced to conclude and does find that, by the very nature of the powers McAfee possesses, this second prosecution of Patrick is simply "a sham and a cover" for the first, unsuccessful prosecution of Patrick in a Virginia court. Since a second prosecution of Patrick in Virginia is forbidden by principles of collateral estoppel, likewise this prosecution is prohibited.

## V. DUE PROCESS AND THE DESTROYED PLANTS

■ One other argument persuades the court to dismiss the charges here. This argument turns on the fact that state law enforcement officers destroyed the alleged marijuana that is at the center of the

---

**2.** The case law is clear that two nominally-separate prosecuting entities who derive authority from a single sovereign may not both prosecute the same person for the same offense. In *Waller v. Florida*, 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970), the defendant was tried and convicted in a St. Petersburg municipal court. Then, the State of Florida tried and convicted the defendant in a Florida circuit court. The Supreme Court held that the municipal court and the circuit court drew their power from the same sovereign. Thus, the circuit court conviction could not stand, even though Florida law treated the two courts as deriving their power from separate sovereigns.

Similarly, in *Grafton v. United States,* 206 U.S. 333, 27 S.Ct. 749, 51 L.Ed. 1084 (1907), a soldier was tried and acquitted in a general court martial. Then, the United States gained a conviction of the defendant in the Philippine Islands,

which were at the time a United States territory. Ruling that the two tribunals at issue derived their power from the same sovereign, the Supreme Court again set aside the single sovereign's second attempt at prosecution of the same alleged crime. *See also Puerto Rico v. Shell Oil Co.*, 302 U.S. 253, 58 S.Ct. 167, 82 L.Ed. 235 (1937).

**3.** The court does not mean to suggest that cooperation between State and federal law enforcement officials is not expected and hoped for in the ongoing battle against criminal activity in this country. *See, e.g., Aboumoussallem,* 726 F.2d 910 ("At most, there was here no more than a joint investigation of criminal activity...."). The case currently before the court simply indicates that State and federal functions can become so blurred and intertwined that distinctions between the two sovereigns can no longer be made.

charges against the Belchers. In a case where police failed to preserve a drunken driver's breath samples, the United States Supreme Court has held that

> [w]hatever duty the constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality ..., evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

*California v. Trombetta,* 467 U.S. 479, 489, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413 (1984) (citation omitted). The Supreme Court has recently added a caveat to the *Trombetta* test: "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process." *Arizona v. Youngblood,* 488 U.S. 51, 58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988). *Youngblood* arose from the loss of evidence following the State's failure promptly to test evidence obtained through the use of a "sexual assault kit" and to refrigerate a sexual assault victim's clothing.

On its face, the *Youngblood* caveat seems to negate the *Trombetta* test unless bad faith on the State's part in destroying the alleged marijuana can first be shown. However, the court finds that *Youngblood's* caveat should not apply in this case. First, a significant factual difference exists here: the *Youngblood* court noted that the prosecution "did not attempt to make any use of the [lost evidence] in its own case in chief." *Youngblood,* 488 U.S. at 56, 109 S.Ct. at 336. Thus, Youngblood was convicted with evidence independent of that that was lost. In contrast, here the government *must* use testimony regarding the alleged marijuana if it is to convict the Belchers.

Second, the *Youngblood* caveat turns on the phrase "potentially useful evidence."

As was pointed out above, the Supreme Court crafted this phrase in the context of a defendant who had been convicted with evidence independent of the lost evidence he argued was unconstitutionally omitted from his own case in chief. The contrast here is marked; rather than evidence that is simply "potentially useful," the destroyed evidence at issue is absolutely crucial and determinative to this prosecution's outcome. Based on this scrutiny of the facts and language in *Youngblood,* the court is persuaded that the Supreme Court did not intend for the *Youngblood* caveat to apply to every instance where State officials intentionally destroy evidence that is material to a defendant's guilt or innocence. In a case where State officials intentionally destroy evidence that is absolutely crucial and determinative to a prosecution's outcome, the court holds that the *Youngblood* caveat does not apply.

■ Thus, only the *Trombetta* test is applicable to the facts here. The second prong of the test is easily met, for it is clear that the Belchers certainly could not secure "comparable evidence by other reasonably available means." This is because the Belchers' alleged crimes concern formerly-distinct plants that no longer exist and that were never tested to determine what they were. The information those plants contained is lost forever and will never be available to the Belchers. The second *Trombetta* prong is certainly satisfied.

Less clear on initial examination is whether the first prong of the *Trombetta* test can be satisfied. The glaring question is whether the plants had "an exculpatory value" that was apparent before the State officials destroyed the plants. Without a doubt the State officials would swear that the plants were marijuana. From this, the court assumes that the government would argue that the plants had no exculpatory value because the State officials are certain the plants were marijuana.

It is a troubling prospect if government officials can routinely destroy drugs, then argue that the drugs had no exculpatory value because the government officials

"knew" that the drugs were indeed drugs.[4] The government might argue that *Trombetta*, which held that police are not required to preserve breath samples, supports such a view. However, in *Trombetta* the Supreme Court noted that "[t]he evidence to be presented at trial was not the breath itself but rather the Intoxilyzer results obtained from the breath samples." *Trombetta*, 467 U.S. at 488, 104 S.Ct. at 2533. Therefore, the facts here are significantly different from those in *Trombetta* in at least two particulars: the State officials performed no tests of any sort on the alleged marijuana, and the fact of the former existence of the very plants that the State officials destroyed will be the crucial item of evidence at trial.

The court is certain that law enforcement officials are almost always correct in determining, by a simple visual inspection, whether a plant is marijuana or not. But, it is the "almost" that convinces the court not to allow this prosecution to go forward. Law enforcement officials are not infallible, and it is certainly conceivable that laboratory results might occasionally exculpate someone accused of manufacturing marijuana or some other drug. Given the facts in this case, the court finds that it would be a violation of due process to prosecute the Belchers.

## VI. THE *PETITE* DOCTRINE

The scenario that has unfolded in this case is extremely unusual. First, the court has never known an elected State prosecutor also to be, at the same moment in time, an appointed Assistant United States Attorney. Each of these positions alone possesses enormous power. Indeed, it can be said that there is no higher power than the right to choose whom to prosecute, whom to nolle pross, and whom to prosecute again. The court has inquired of other judges throughout the land and has found no other instances of a prosecutor having such broad powers that he can move from State to federal prosecutions and back again at will.

Second, the court notes that, in the normal course of events, State and federal prosecutors readily yield to one another. That is, if the State prosecutes, the federal government normally does not, and if both sovereigns begin a prosecution, upon termination of one's prosecution, win or lose, the other sovereign drops its prosecution. This is normal conduct even though the separate sovereigns are not bound by double jeopardy claims. A good example of this conduct occurred recently when the United States prosecuted a man in this court for bank robbery. During the pendency of the federal prosecution, the City of Bristol, Virginia indicted the same man for stealing a truck that was used in the bank robbery. Within a few days of the man's acquittal of the bank robbery in this court, the Commonwealth's Attorney of Bristol, Virginia nolle prossed the State charge of truck theft.

Unfortunately, McAfee's actions stand in sharp contrast to the normal practices regarding dual prosecutions. Recently, he personally appeared in this court in his guise as a Special Assistant United States Attorney and prosecuted two people on drug charges. The jury acquitted both defendants. Then, McAfee as Commonwealth's Attorney of Wise County, Virginia secured a State indictment against one of the defendants on the same charges. He then gained a conviction of the defendant in State court, even though she had been acquitted in this court. It is likely that somewhere in such a chain of events prosecution ends and persecution begins, that government power becomes so oppressive to the citizen that she no longer has the power or the will to defend herself.

---

4. During a recent criminal trial unrelated to this case, the Court had occasion to question a forensic chemist who was testifying for the United States regarding marijuana. The chemist stated that he subjects substances claimed to be marijuana to three separate tests, one of which is a visual inspection *under a microscope* and two of which are complex chemical tests. The substance must produce a positive result in all three tests before the chemist may identify the substance as marijuana. Most telling, the chemist reported that he had received plants from law enforcement officers who "swore" that the plants were marijuana. When tested, the plants turned out not to be marijuana.

Given the legal and ethical problems that repeated prosecutions can create, the United States Department of Justice has promulgated the *Petite* Doctrine. *See* § 9–2.142, Chap. 2, United States Attorneys' Manual. The Doctrine *precludes* the initiation or continuation of federal prosecution following the termination of a State prosecution based on the same act or acts unless there is a "compelling federal interest supporting the dual or successive federal prosecution." *Id.* at subsection A. Needless to say, the court fails to see the "compelling federal interest" in a small marijuana patch in Wise County, Virginia. There are no grounds in this case to ignore the *Petite* Doctrine, especially since the Doctrine is designed "to protect persons charged with criminal conduct from the unfairness associated with multiple prosecutions and multiple punishments for substantially the same act or acts." *Id.*

The *Petite* Doctrine is an internal policy of the Justice Department by which it imposes self-discipline upon itself. Realizing this, the court directed a letter to acting United States Attorney E. Montgomery Tucker calling his attention particularly to Patrick's case. He replied as follows: "Dual sovereignty does not apply, because the cases were disposed of on pretrial motions and were never tried on the merits." Though the court is loath to tell the United States Attorney how to conduct his affairs, it is important to realize that the United States Attorney's application of the *Petite* Doctrine is inconsistent with the Doctrine's terms. The Doctrine applies

whenever there has been a prior [S]tate proceeding or a prior federal prosecution (including a plea bargain) resulting in (1)

an acquittal, (2) a conviction, or (3) a dismissal or other termination of [a] case on the merits.

*Id.* at subsection A.1. At the end of this passage, the reader is referred to footnote 3:

The dual or successive federal prosecution policy does *not* apply—and thus authorization is not required—where the [S]tate proceeding or the prior federal prosecution did not progress to the stages at which jeopardy attached *or was terminated in a manner that would not, under the Double Jeopardy Clause, preclude a further [S]tate or federal prosecution for the same offense.*

*Id.* (emphasis on "not" in original; other emphasis added).

As the court's earlier discussion of the collateral estoppel component of the Double Jeopardy Clause (Part IV, *supra*) shows, Patrick's case is one whose termination *would* (and does) preclude a further prosecution under the Double Jeopardy Clause. Since the court bases its conclusions regarding collateral estoppel on a case the Fourth Circuit Court of Appeals recently decided, it presumes that the United States Attorney was and is familiar with this area of Double Jeopardy jurisprudence. At any rate, at least in Patrick's case, the *Petite* Doctrine *by its terms* would preclude this prosecution absent authorization from an appropriate Assistant United States Attorney General.[5] Of course, since the *Petite* Doctrine is an internal doctrine of the Justice Department and confers no substantive rights on criminal defendants, *United States v. Howard*, 590 F.2d 564 (4th Cir.1979), the court does

**5.** The United States Attorneys' Manual's "Statement of Policy" regarding the *Petite* Doctrine concludes with the following paragraph:

In order to prevent unwarranted dual or successive prosecutions, the policy requires that authorization be obtained from the appropriate Assistant Attorney General prior to initiating or continuing the federal prosecution. A failure to obtain prior authorization of a dual or successive federal prosecution will result in a loss of any conviction through a dismissal of the charges unless it is later determined that there was in fact a compelling federal interest supporting the prosecution and a

compelling reason to explain the failure to obtain prior authorization.

The court is not sure even now whether the United States Attorney has complied with this provision of the Manual. The United States Attorney's letter simply states that "we have taken the extra step of conferring with our colleagues at the Department of Justice." Whether or not the United States Attorney has contacted the *"appropriate Assistant Attorney General,"* as required by the Manual, has not been revealed to the court. At least it is certain that there has not been a finding of a "compelling federal interest" in this case.

not rely upon the Doctrine in dismissing the indictment.[6]

## CONCLUSION

Based on the facts, analyses, and conclusions described above, the court grants the defendants' motions to dismiss. The indictment is dismissed with prejudice. The court will enter an appropriate Order.

---

**6.** The court personally is persuaded that the *Petite* Doctrine should confer substantive rights on criminal defendants. The court agrees with the dissenting opinion in *United States v.* *Thompson,* 579 F.2d 1184 (10th Cir.) (en banc), *cert. denied,* 439 U.S. 896, 99 S.Ct. 257, 58 L.Ed.2d 243 (1978).