**UNITED STATES of America**

v.

**Michael Alan RABINOWITZ, Defendant.**

**Crim. Action No. 94–00049–C.**

United States District Court,
W.D. Virginia,
Charlottesville Division.

Jan. 15, 1998.

David L. Heilberg, Charlottesville, VA, John Kenneth Zwerling, Zwerling & Kemler, P.C., Alexandria, VA, for Michael Alan Rabinowitz.

Jean Barrett Hudson, U.S. Atty.'s Office, Charlottesville, VA, for U.S.

Frederick Payne, Charlottesville, VA, for Surety.

## ORDER

MICHAEL, Senior District Judge.

The Court has considered defendant's 28 November 1994 Motion to Suppress Evidence, 24 February 1997 Motion for Sanctions for Destruction of the Evidence, 11 July 1997 Motion to Review Forfeiture of Bail; the Surety's 2 July 1997 Motion to Review Bond; the 2 July 1997 motion of the United States for Reconsideration of Bond Remission, and the responses and memoranda of the various parties.[1] For the reasons stated in the accompanying memorandum opinion, is hereby

### ADJUDGED AND ORDERED

(1) That the United States' 2 July 1997 Motion for Reconsideration of Bond Remission shall be, and hereby is, DENIED as moot;

(2) That the Surety's 2 July 1997 Motion to Review Bond shall be, and hereby is, DENIED as moot;

(3) That the Defendant's 11 July 1997 Motion to Review Forfeiture of Bail shall be, and hereby is, DENIED as moot;

(4) That the 16 June 1997 order of the magistrate judge shall be, and hereby is, VACATED insofar as it forfeits and remits a bond, but shall be, and hereby is, AF-

---

1. At the hearing on 10 November 1997, the defendant withdrew his 17 March 1997 Motion to Compel Production, or Alternatively, for Sanctions.

FIRMED insofar as it finds a violation of the conditions of release;

(5) That defendant's 28 November 1994 Motion to Suppress evidence shall be, and hereby is, DENIED; and

(6) That defendant's 24 February 1997 Motion for Sanctions for Destruction of Evidence shall be, and hereby is, DENIED.

The Clerk of the Court is hereby directed to send a certified copy of this Order to all counsel of record.

## MEMORANDUM OPINION

### BACKGROUND

On 13 September 1994, police arrested Michael Alan Rabinowitz for the manufacture of, with intent to distribute, marijuana. The defendant was initially charged in state court with a violation of Virginia Code Section 18.2-248.1. The Commonwealth later moved to *nol prosse* the case and the federal government instituted the current action. Defendant was indicted by a federal grand jury on 14 September 1994. He first appeared before this court on 6 October 1994 and was released on bond. The court subsequently found two bond violations at two separate hearings. The parties have filed numerous motions and responses regarding evidence and the bond forfeiture.

### MOTIONS TO SUPPRESS

*Motion to Suppress Statements and Physical Evidence Obtained in Search of 14 September 1994*

On 28 November 1994, Defendant filed a Motion to Suppress Evidence of "[a]ny and all oral statements ... along with any physical evidence seized as a result of the illegal warrantless search and seizure of the accused and his personal property." The defendant argues that the officers lacked probable cause to arrest him. Because there was no probable cause for his arrest, Mr. Rabinowitz argues, the search of his possessions was illegal and the evidence found therein should he excluded. Moreover, the defendant argues that any statements which he made to the police at the time of his arrest should be suppressed because his rights under *Miranda* were violated. *Miranda v.*

*Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)

The Fourth Amendment guarantees that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated and no Warrants shall issue, but upon probable cause supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." U.S. Const. amend. IV. The protection of the Fourth Amendment is effectuated through the exclusionary rule, which prohibits admission into evidence of illegally obtained evidence or statements. *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914); *Wong Sun v. United States*, 371 U.S. 471, 484–87, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Should police officers act without a warrant, the state must show that the situation falls within one of the exceptions to the warrant requirement of the Fourth Amendment. *Coolidge v. New Hampshire*, 403 U.S. 443, 445, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). A warrantless search of a person and his personal effects is permissible if incidental to an arrest if the arrest is made on the basis of an arrest warrant, *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), or upon the basis of probable cause, *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). *See also, United States v. Robinson*, 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); *Gustafson v. Florida*, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973). A warrantless search incident to an arrest may also be conducted of the area "within [the defendant's] immediate control;" from which the defendant might be able to gain possession of a weapon or destroy evidence. *Chimel, supra*, 395 U.S. at 762–63. However, a warrantless search cannot provide probable cause for an arrest. *Smith v. Ohio*, 494 U.S. 541, 110 S.Ct. 1288, 108 L.Ed.2d 464 (1990). Thus, if the arrest of Mr. Rabinowitz was lawful, then the search of the defendant's possession (a backpack) was lawful. If the arrest of Mr. Rabinowitz was unlawful, *i.e.* not based on probable cause or based only upon probable cause created by the search of the backpack, then the evidence seized from

the backpack must be excluded from evidence.

■ A warrantless arrest is lawful if it meets, at a minimum, the probable cause standard which governs the issuance of warrants. *Wong Sun v. United States,* 371 U.S. 471, 479, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Probable cause exists if, under the "totality of the circumstances known to the officer at the time of the arrest," *Taylor v. Waters,* 81 F.3d 429, 434 (4th Cir.1996), *citing, United States v. Al–Talib,* 55 F.3d 923, 931 (4th Cir.1995), the facts and circumstances "would warrant the belief of a prudent person that arrestee had committed or was committing an offense." *Taylor, supra,* 81 F.3d at 434, *quoting, United States v. Garcia,* 848 F.2d 58, 59–60 (4th Cir.1988). *See also, Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949) ("Probable cause exists where 'the facts and circumstances within their (the officers') knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed."), *citing, Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925) ("the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient in themselves to warrant a man of reasonable caution in the belief that intoxicating liquor was being transported in the automobile which they stopped and searched"). As the Court of Appeals for the District of Columbia Circuit explains, "Probable cause is not a philosophical concept existing in a vacuum; it is a practical and factual matter. A fact which spells reasonable cause to a doctor may make no impression on a carpenter, and vice versa." *Bell v. United States,* 254 F.2d 82, 85 (D.C.Cir.1958). While the court does not require evidence sufficient to support a conviction, it does require something more than "mere suspicion." *Wong Sun, supra,* 371 U.S. at 479.

■ In the case before the court, police had been conducting surveillance of several fields of marijuana in a wooded area of Albemarle County and had removed numerous marijuana plants from the area. On the day in question, the police observed Mr. Rabinowitz, carrying a backpack and looking about him cautiously, approach one marijuana field for a distance of approximately twenty yards along a well-beaten path. Officer John Vaber testified that the defendant behaved as if aware of something being awry in the situation, possibly alerted by the disturbance in the foliage by the removal operations of the previous day.

When Mr. Rabinowitz was within thirty yards of the marijuana growth, the police revealed and identified themselves. Although the officers were attired in camouflage, they announced themselves as police and wore badges on their belts or on their vests. At approximately the same moment, the defendant suddenly turned to leave, dropping his backpack to the ground as he turned. Police caught the defendant, placed him under arrest, and read him his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Mr. Rabinowitz requested a lawyer. Police searched the backpack incident to the arrest and found plant food, string, and a book entitled "The Field Guide to Medicinal Plants."

The foregoing events were sufficient basis for probable cause. The defendant's cautious but focused approach to the marijuana fields suggest a familiarity with the area and the fields and an awareness of the dangers inherent in cultivating illegal narcotics. His sudden retreat and abandonment of his property also suggest probable cause. While the defendant offers innocent explanations for his possessions that day (a backpack, folding chair, and binoculars), the defendant does not offer an innocuous explanation for the defendant's behavior both before and after the officers identified themselves. This court finds that the officers had probable cause to arrest the defendant and, thus, probable cause, to search the backpack. The motion to suppress the evidence of the contents of the backpack is denied.

Having found probable cause for the arrest, this court turns to the oral statements of the defendant to the officers, which statements the defendant also seeks to suppress. At the time of arrest, the officers asked the defendant for his name, date of birth, and

social security number. Defendant gave a false name, address, date of birth, and social security number. He also produced a false identification card with his photograph on it. The defendant was later identified as Michael Alan Rabinowitz.

■ Under the Fifth Amendment, *Miranda* warnings are required when an individual is interrogated while in custody. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The officers testified that they gave the *Miranda* warning to the defendant before eliciting information regarding his identity, including his name, social security number, date of birth, and address. However, these questions were proper even had the *Miranda* warning not been given by the officers. The Fourth Circuit has carved out a "booking exception" in which the taking of personal information to establish identity, place of residence, and other basic information, does not constitute "interrogation" for purposes of *Miranda*. *United States v. Taylor*, 799 F.2d 126, 128 (4th Cir.1986), *cert. denied*, 479 U.S. 1093, 107 S.Ct. 1308, 94 L.Ed.2d 162 (1987). The information which the defendant seeks to suppress was given in response to the officers' proper attempt to establish identity. Under *Taylor*, the taking of such information does not constitute interrogation and therefore cannot form the basis for an assertion of a violation of *Miranda*. This court denies the defendant's motion to suppress the responses of the defendant to the officers' questions regarding his identity.

*Motion for Sanctions for Destruction of Evidence*

On 24 February 1997, the defendant moved for sanctions for the destruction of the evidence of marijuana plants. The defendant alleges that counsel for the defendant did not have an opportunity to count independently the number of marijuana plants seized, and that the court should suppress the evidence of the plants completely or, alternatively, that the government should be barred from alleging that the conspiracy involved more than one hundred plants. In Virginia law under which the defendant was first charged, the weight of the plants is the relevant measure. In federal law under which defendant later was charged, the number of plants is the relevant measure. Defendant's counsel did accompany the Commonwealth's attorney to the weighing and destruction of the marijuana plants, but did not count the plants at that time. However, when the marijuana plants were originally discovered and carried into police custody, the police counted the plants. Two officers independently counted the plants and reported their numbers to a third officer. When the numbers conflicted, the counting officers recounted the patch. The third officer's notes indicate a total of 147 marijuana plants among the four patches. Defendant objects to the use of the officer's number as defendant's counsel can no longer verify the number.

■ The government has a constitutional duty to disclose to a criminal defendant evidence which is material to the proof of innocence or guilt. *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *California v. Trombetta*, 467 U.S. 479, 480, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). *United States v. Sanders* explains that a failure to produce alone is not a due process violation. 954 F.2d 227, 231 (4th Cir.1992), *citing Arizona v. Youngblood*, 488 U.S. 51, 57–58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). *Trombetta* defined material evidence as that possessing "an exculpatory value that was apparent before the evidence was destroyed, and ... of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." 467 U.S. at 489. *Arizona v. Youngblood* required a showing of bad faith on the part of officials who destroyed or lost evidence in order to find a constitutional violation. 488 U.S. at 58. However, a Virginia district court has stated that if evidence is crucial to the defense, then the additional *Youngblood* bad faith showing need not be made. *United States v. Belcher*, 762 F.Supp. 666, 672 (W.D.Va.1991) (Williams, J.) (dismissing indictment because government destroyed alleged marijuana plants before scientific testing to confirm that plants were marijuana).

■ In the instant case, the evidence of the marijuana plants is clearly central to the prosecution, as it was in *Belcher*. Over one hundred plants subjects the defendant to much higher penalties than less than one hundred plants. The instant case differs from *Belcher* in one central fact, however. In the case before the court, counsel for the defendant had full opportunity to inspect the evidence. Defendant's counsel was present at weighing and destruction of the marijuana. It is not uncommon for federal prosecution to follow or replace state prosecution in narcotics offenses.

Under *Brady v. Maryland, supra,* the due process demands of the Constitution are not violated if exculpatory evidence is "reasonably available to the defendant" and the defendant simply does not inspect that evidence. *United States v. Wilson,* 901 F.2d 378, 381 (4th Cir.1990). *Wilson* explains, "when the exculpatory information is not only made available to the defendant but also lies in a source where a reasonable defendant would have looked, a defendant is not entitled to the benefit of the *Brady* doctrine." *Id.* The evidence in the instant case was made available to the defendant. This court is hesitant to create a rule that would encourage defendants to deliberately avoid certain forms of inspection so as to later be able to seek dismissal of the indictment based on that failure to inspect. Defendant had the opportunity to view, inspect, and count the marijuana plants. Defense counsel chose to inspect the plants in a particular way and not another. Defense may not now profit from its own decision not to count the marijuana plants. The plants were available to the defense for inspection and counting. The law requires no more.

The fairly detailed analysis set out *supra* is perhaps an exercise in supererogation. A close inspection of the time line in this case reveals an interesting pattern. The defendant was arrested on 13 September 1994. He was indicted under the federal law on 5 October 1994, and the marijuana was ultimately destroyed on 9 November 1994. Thus, at the time of the destruction of the marijuana, it was obvious that the defendant was under charges brought pursuant to federal law, with the consequent requirement of determining an appropriate count of the marijuana plants. In fact, photographic evidence before the court reveals that defense counsel was present at the destruction of the marijuana, and could have made a count of the plants destroyed at that time, but failed to avail himself of that opportunity. It might well be argued that the sequence of state charges, federal charges, and destruction of the marijuana is such that defense counsel must have been on notice that the number of plants was a material issue in the defense of the defendant. Failure to take advantage of this opportunity to count the marijuana is certainly nothing which can be attributed to the government, and this analysis in itself would dispose of the arguments presented by the defendant in support of this motion. The defendant's 24 February 1997 Motion for Sanctions for the Destruction of Evidence is denied.

## MOTION TO REVIEW BOND FORFEITURE AND REMISSION

■ The parties have also filed several motions regarding bond forfeiture and remission. On 2 July 1997 the United States filed a "Motion of United States Seeking Review of Bail Remission," arguing that the magistrate judge had failed in the June 1997 hearing to make a required showing under Fed. R.Crim.P. 46 that "justice does not require forfeiture," and that Mrs. Rabinowitz had elected to remain as the surety even after the first violation of the conditions of bond and, therefore, should have been required to forfeit some or all of the remaining $30,000 bond. On 11 July 1997, the surety moved the court to review the June 1997 forfeiture, arguing that the surety had not received notice of the government's intent to seek forfeiture, that the bond applied only to failures to appear, and that justice did not require forfeiture of the bond. Alternatively, the surety requested that the court sustain the remittance of the entirety of the bond. The surety also moved this court to "Strike Out Government's Motion," arguing a "willful and intentional noncompliance with the local rules of this court and the terms of Rule 49 of the federal rules of criminal procedure [sic]" in failing to present a copy of the motion of the United States to the surety.

Defendant was originally released pursuant to 18 U.S.C. § 3142 which allows release of a defendant pending trial. At the hearing on 6 October 1994, this court released defendant on certain conditions and a $40,000 bond secured by the defendant's mother with a lien on real property. The court specifically told the defendant at this hearing that routine urine screens for use of illegal narcotics would be a condition of the bond.

Upon a finding by the court of a violation of a condition of release, the defendant is subject to "revocation of release, an order of detention, and a prosecution for contempt of court." 18 U.S.C. § 3148 (West Supp.1997). The court may, despite the violation of the conditions of release and upon finding that there are sufficient conditions to assure both the appearance of the defendant and the safety of the public, return to section 3142 procedures for release. *Id.*

In October 1996, while the defendant was out on bond, a routine urine screen indicated the use of controlled substances. On 22 October 1996, United States Magistrate Judge Crigler found a violation of the conditions of bond and ordered payment of $10,000. The magistrate judge continued the defendant on release with the same conditions and a new requirement that the defendant live with the surety in her home. The original bail piece was not replaced by a new document or revised in any way.

On 30 April 1997, defendant again tested positive in a routine urine screen for the use of illegal substances. The United States requested a hearing in front of Magistrate Judge Crigler for 16 June 1997. No written record exists as to why the hearing was requested. Two notices mailed out for 16 June 1997 hearings set a "Bond Violation Hearing" for 2:00 PM before Judge Crigler and a "Hearing on all Motions" for 11:00 AM before Judge Michael. The only pending written motion regarded suppression of evidence.

The motion hearing before Judge Michael was postponed. Magistrate Judge Crigler,

in the hearing before him, found a violation of the conditions of release. Counsel for the surety then argued that the bail piece only assured appearance and, there having been no appearance problems, there was no forfeiture of the bond under Rule 46. The magistrate judge held that the bond ensured compliance with all conditions of release. Moreover, the magistrate judge noted that he had put Mrs. Rabinowitz on notice at the first bond condition violation hearing (16 October 1996) that she would be liable should defendant violate any conditions of bond. Magistrate Judge Crigler again forfeited the bond. He then remitted the entire amount of the bond, stating that the original bond instrument had been amended during the October 1996 hearing, and that the $10,000 paid in October 1996 was the only money due the court. The court found no liability of Mrs. Rabinowitz remaining and the magistrate judge stated that Mrs. Rabinowitz was "discharged from this date forward."

The payment of $10,000 after the October 1996 bond violation hearing was characterized as a partial forfeiture.[2] Fed.R.Crim.P. 46(e) requires full forfeiture and then allows remission to a certain amount or the setting aside of a certain portion of the forfeited amount. The Rule does not allow partial forfeiture. Thus, the legal characterization of the actions of the magistrate judge in October 1996 must be that the magistrate forfeited the bond and then remitted all but $10,000. However, once a forfeiture of a bond has been set aside or remitted, Fed. R.Crim.P. 46(f) mandates ("the district court shall") that the court exonerate the obligors and release any bail. Moreover, the rule states that a "surety may be exonerated by a deposit of cash in the amount of the bond." Therefore, when the magistrate judge remitted the $30,000 and the defendant paid the $10,000 as ordered by the court, the obligors were exonerated. "Exonerate" derives from the Latin past participle "exoneratus," meaning "to relieve," "to free" (literally meaning, lacking, "ex;" a burden, "onus").[3] Mrs. Rabi-

---

2. The defendant paid the money himself and no demand for payment was made on the surety.

3. Case law supports this interpretation of the effect of forfeiture on the bond instrument. A bond instrument is a contract. *United States v. Miller,* 539 F.2d 445, 447 (5th Cir.1976); *United*

nowitz was freed of her obligation. The right of the United States to demand forfeiture was extinguished. Thus, the magistrate could not amend the bond and the practical effect of the October 1996 hearing was to release the defendant without bond. This being so, no bond existed to be forfeited by the time of the June 1997 hearing. Therefore, the court upholds the magistrate judge's finding of a violation of the conditions of release. However, any actions of the magistrate judge pertaining to the bond which no longer existed are vacated. Because no suretyship existed by the time of the June 1997 hearing, all motions of the surety are dismissed as the surety lacked standing. Because no bond existed to be forfeited or remitted by the time of the June 1997 hearing, all motions of the United States pertaining to the forfeiture or remission of the purported bond are dismissed, likewise, as moot.

An appropriate order this day shall issue.

*States v. Martinez,* 613 F.2d 473, 476 (3d Cir. 1980); *United States v. Wilson,* 564 F.2d 379 (10th Cir.1977). When the obligation is met, the bond is extinguished. *See Milhem v. United States,* 834 F.2d 118, 122 (7th Cir.1987).