**UNITED STATES of America,
Plaintiff,**

v.

**Sean BUCCI, Defendant.**

**No. 03–CR–10220–MEL.**

United States District Court,
D. Massachusetts.

Dec. 28, 2006.

Gary Zerola, Michael F. Natola, Robert M. Goldstein, Boston, MA, for Defendant.

## MEMORANDUM AND ORDER

LASKER, District Judge.

Sean Bucci moves: (1) to dismiss the indictment because of the destruction of evidence by the government; (2)to dismiss Count Five of the Second Superseding Indictment on statute of limitations grounds; and (3) to dismiss the Second Superseding Indictment on grounds of alleged vindictive prosecution. For the reasons set forth below, the motions are DENIED.

A federal criminal complaint was filed against Bucci and several co-defendants on June 4, 2003, alleging that the defendants conspired to distribute and distributed marijuana. Bucci was indicted on July 1, 2003. The government filed a superseding indictment on February 3, 2005, which charged Bucci with conspiring to distribute 1000 kilograms of marijuana, rather than the 100 kilograms alleged in the original indictment. A Second Superseding Indictment, filed on July 28, 2005, added charges of conspiracy to commit money laundering, money laundering, structuring, and tax evasion.

### I. Motion to Dismiss Based on the Destruction of Evidence

On June 13, 2003 the DEA sent a notice to the U.S. Attorney's Office expressing its intention to destroy all but a representative sample of the 453 pounds of marijuana it seized in connection with this case, pursuant to its normal procedures. The letter advised that the marijuana would be destroyed within sixty days unless, prior to the expiration of the sixty-day period, the DEA received written notice from the U.S. Attorney's Office requesting to preserve the marijuana. Bucci filed a motion to preserve the evidence on June 24, 2003, which the government opposed on technical grounds. The majority of the marijuana was destroyed on August 11, 2003, leaving eleven representative samples from each package seized, weighing a total of 6.8 pounds. Nearly two years later, in June 2005, Bucci filed a motion to re-weigh the evidence, but was informed that most of the marijuana had been destroyed.

Bucci now seeks dismissal of the indictment because of the destruction of the marijuana evidence. He maintains that the government was on notice that Bucci took action to preserve the evidence and that the government was obligated to write a letter to the DEA to ensure that it was not destroyed. Bucci argues that the government's failure to do so has resulted in a violation of Bucci's due process rights, by depriving him of the opportunity to inspect and weigh the marijuana he is charged with possessing. Bucci contends that he is left without a means to challenge the government's charges since he cannot conduct his own tests or otherwise refute the government's assertion that the marijuana weighed 453 pounds. Bucci argues that the weight of the marijuana is a significant issue in this case.

While the government may deserve censure for its failure to take action to preserve the marijuana in question, Bucci nevertheless fails to meet the standard for proving a due process violation based on the destruction of evidence. As the First Circuit recently explained, to prevail on such a claim a defendant must show: (1) either that the evidence had an exculpatory value that was apparent prior to its destruction *or* that the government acted in bad faith in destroying potentially useful evidence; *and* (2) that the evidence was irreplaceable. *See Olszewski III v. Spencer,* 466 F.3d 47, 55–58 (1st Cir.2006); *see also Arizona v. Youngblood,* 488 U.S. 51,

56–58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988); *California v. Trombetta,* 467 U.S. 479, 488–489, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984).

Addressing the threshold question of whether the destroyed evidence was apparently exculpatory or merely potentially useful, the government argues persuasively that the marijuana is at most potentially useful. The government maintains that the destroyed marijuana is properly characterized as inculpatory. It is difficult to see how such a large quantity of marijuana could be not only exculpatory, but exculpatory in a way that was readily apparent prior to its destruction.

Since the marijuana in this case was at most potentially useful, to prevail on his claim Bucci must prove bad faith on the part of the government. He has not done so. Bucci maintains that the government was on notice that he wanted the evidence preserved, but the government let the DEA destroy the majority of the marijuana anyway. Nevertheless, although this is the case, it is not sufficient to establish bad faith on the part of the government. While the marijuana was ultimately destroyed, the DEA preserved representative samples and documented the process in photographs and videotapes. There is no indication that the evidence was destroyed out of animus or an effort to conceal exculpatory information. In sum, since there is no evidence of bad faith, which is the first element of a due process violation based on the destruction of potentially useful evidence, Bucci's motion to dismiss must fail.

■ Moreover, Bucci has not established that the marijuana was irreplaceable, a finding that is required under the governing precedents. Evidence is irreplaceable if its destruction leaves defendants "without alternate means of demonstrating their innocence." *See Trombetta,* 467 U.S. at 490, 104 S.Ct. 2528. The Supreme Court concluded in *Trombetta* that alternatives existed for challenging the government's drunk driving allegations without the actual breath samples, where the defendant remained free to inspect the breathalyzer machine, argue that other factors influenced its findings, and cross-examine the officer who administered the test. *See id.* Under *Trombetta,* Bucci's irreplaceability argument fails, since he may still challenge the accuracy of the DEA's testing equipment, test the representative samples himself, and cross examine the individuals who weighed the marijuana.

The case upon which Bucci primarily relies, *United States v. Belcher,* 762 F.Supp. 666 (W.D.Va.1991), is readily distinguishable. In *Belcher,* the alleged marijuana plants were destroyed before any tests were conducted to confirm the officer's visual determination that they were, in fact, marijuana plants. As a result, the court properly concluded that the defendants were deprived the opportunity to challenge the allegations against them since the plants were never tested before they were destroyed, and the defendants therefore lacked means to refute the government's assertion that the plants were marijuana. *See Belcher,* 762 F.Supp. at 672. In contrast, Bucci is free to re-test the remaining marijuana or challenge the tests and measurements that have been conducted.

For the foregoing reasons, Bucci's motion to dismiss based on the destruction of evidence is DENIED.

## II. *Motion to Dismiss Based on the Statute of Limitations*

Bucci contends that Count Five of the Second Superseding Indictment must be dismissed on statute of limitations grounds. Since the Second Superseding

Indictment was returned on July 28, 2005, the relevant date for statute of limitations purposes is July 28, 2000. Count Five charges Bucci with violating 18 U.S.C. § 1957 by "engaging in monetary transactions in property derived from specified unlawful activity." More specifically, the indictment alleges that on or about July 28, 2000, Bucci deposited approximately $222,179.88 in to his account at First Massachusetts Bank with proceeds derived from the sale of a controlled substance.

Bucci contends that the $222,179.88 deposit referred to in Count Five was actually deposited on July 27, 2000. The back of his deposit slip is marked with the bank's date and time stamp indicating it was deposited on July 28, 2000 at 14:30, or 2:30pm. However, according to the bank's customer service representative, Heather Mellow, the bank changes the date stamp at 2pm each day. As a result, all deposits made after 2pm are stamped with the date of the following business day. Since the deposit slip indicates that it was submitted at 2:30pm, after the date stamp was changed, Bucci maintains that the deposit was actually made on July 27. Accordingly, Bucci argues that because the five-year statute of limitations expired on July 27, 2005, the day before the Second Superseding Indictment was returned, the charge should be dismissed.

■ The government does not challenge Bucci's showing that he physically submitted the money to the bank on July 27, 2000. The government contends however, that Bucci continued to be "engaged" in a money laundering transaction within the meaning of Section 1957 until the money was posted to Bucci's account on July 28. On this basis, the government maintains that the statute of limitations does not bar Count Five.

The issue presents a difficult question that has not been addressed by the First Circuit. Strong, well-reasoned arguments have been presented on both sides. However, given the language of the relevant statute, which applies to defendants who "knowingly engage[ ]" in certain monetary transactions, I conclude that Bucci remained "engaged" in the monetary transaction until the deposit process was completed on July 28, 2000. 18 U.S.C. § 1957(a).

The only published Court of Appeals opinion on this issue appears to be the Seventh Circuit's decision in *United States v. Li*, 55 F.3d 325 (7th Cir.1995). In *Li*, the Seventh Circuit construed a similar money laundering statute involving the laundering of monetary instruments, 18 U.S.C. § 1956, which applies to a defendant who, "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct" a financial transaction involving illegally obtained funds. 18 U.S.C. § 1956(a)(1). Since the statute defines "conducts" as "initiating, concluding, or participating in initiating or concluding a transaction," 18 U.S.C. § 1956(c)(2), the court held initiating a deposit was sufficient to complete the financial transaction element of the offense. *See United States v. Li*, 55 F.3d 325, 330 (7th Cir.1995). The court concluded that the offense was committed when the deposit was initiated, rather than when the deposit was fully processed and that the defendant's conviction was correctly vacated on statute of limitations grounds. *See id.*

Unlike *Li*, Bucci is charged with violating 18 U.S.C. § 1957, which applies to a defendant who "knowingly engages or attempts to engage in a monetary transaction in criminally derived property . . ." 18 U.S.C. § 1957(a). The difference in the language of Section 1956 as compared to Section 1957 is significant. Section 1956

defines "conduct[ing]" a transaction to include "initiating" a transaction. By contrast, Section 1957 applies to defendants who "engage" in a financial transaction, without further defining the term. The *Li* precedent is distinguishable because it relies heavily on the definition of a particular term in Section 1956 ("conducts") that does not appear in Section 1957.

Relying on the ordinary meaning of "engage," the government argues that an individual is "engaged" in a monetary transaction until it is completed. According to the bank's representative, Bucci would have received a deposit slip indicating that his deposit was a "next day transaction." He was therefore put on notice that the bank would not consider the transaction complete until the next business day. In these circumstances, I find it reasonable to conclude that Bucci was "engaged" in the monetary transaction until his deposit was processed on July 28, 2000. The charged action therefore occurred within the statute of limitations period.

For these reasons, Bucci's motion to dismiss Count Five of the Second Superseding Indictment on statute of limitations grounds is DENIED.

### III. Motion to Dismiss For Vindictive Prosecution

Bucci argues that the Second Superseding indictment should be dismissed due to vindictive prosecution. He maintains that the government's true motivation for superseding was its concern about Bucci's website, "whosarat.com," and its resulting animus toward Bucci. For largely the same reasons stated in this Court's November 20, 2006 Memorandum and Order denying Bucci's motion to compel discovery relating to vindictive prosecution, this motion to dismiss is DENIED.

 To succeed on a vindictive prosecution claim the defendant must prove by objective evidence that the prosecutor acted with an improper prosecutorial motive and that the charges were brought solely to penalize the defendant. *See United States v. Goodwin,* 457 U.S. 368, 380 n. 12, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982). To establish vindictive prosecution a defendant must either: (1) produce evidence of "actual vindictiveness" or (2) demonstrate a sufficient likelihood of vindictiveness to warrant a presumption of prosecutorial vindictiveness. *See United States v. Stokes,* 124 F.3d 39, 45 (1st Cir.1997); *United States v. Marrapese,* 826 F.2d 145, 147 (1st Cir.1987). "Actual vindictiveness" requires direct evidence that the prosecutor was motivated by a desire to punish the defendant for asserting legal rights, a standard that has been characterized as a "rare" and "exceedingly difficult" to meet. *See Goodwin,* 457 U.S. at 380–81, 102 S.Ct. 2485; *United States v. Gary,* 291 F.3d 30, 34 (D.C.Cir.2002). Bucci has not presented direct evidence of actual vindictiveness by the prosecution. The evidence he presents in support of his motion, such as the timing of the superseding indictment and the various articles and documents expressing concern over whosarat.com, does not constitute direct proof of prosecutorial motive.

Nor has Bucci offered sufficient evidence to create a "realistic likelihood of vindictiveness" warranting a rebuttable presumption of vindictiveness. Echoing his prior discovery motion, Bucci cites as evidence of vindictiveness articles, statements, and alerts from local, state, and federal law enforcement officials expressing concern about the whosarat.com website and its potential impact on law enforcement. While these documents clearly illustrate that various levels of government are worried about the website, they do not establish animus or vindictiveness. The fact that the government is concerned about whosarat.com does not establish a

"realistic likelihood" that it chose to seek superseding indictments against Bucci to penalize him for creating the site. Nor does this concern prove that the prosecution was motivated by animus toward Bucci. Given that the majority of the articles and documents Bucci cites were issued after the first superseding indictment was returned, they do not offer insight into the government's motivations just prior to its decision to supersede.

Similarly, the timing of the superseding indictments fails to establish a realistic likelihood of vindictiveness sufficient to warrant a rebuttable presumption. As discussed in this Court's November 20 Memorandum and Order, the first superseding indictment was not entered until February 2005, six months after Bucci set up the website in August 2004. The length of time that elapsed between the website's creation and the superseding indictments, coupled with prosecutors' significant discretion in making charging decisions, the timing of the indictments do not establish a reasonable likelihood of vindictiveness.

Moreover, the precedent Bucci primarily relies upon for support, *United States v. P.H.E. Inc.*, 965 F.2d 848 (10th Cir.1992), which was considered in connection with Bucci's motion to compel discovery on this issue, is readily distinguishable. In *P.H.E.*, the evidence of vindictiveness presented included written letters from the prosecutor clearly explaining that the goal of his multiple prosecution scheme was to run pornography publishers like P.H.E. out of business. *P.H.E.*, 965 F.2d at 850. Bucci simply has not presented any comparable evidence of impermissible prosecutorial motive in this case. Statements of concern about whosarat.com included newspaper articles or alerts, are not nearly as persuasive evidence of vindictiveness as a prosecutor's written statement that the government's intention is to attack pornography producers from all angles. In contrast to *P.H.E.*, none of the documents Bucci cites indicate that the government's purpose in seeking the superseding indictments is to shut down the website.

Finally, the new evidence Bucci provides in connection with his vindictive prosecution claim lacks the detail and documentary support necessary to give it any significant evidentiary value. Bucci asserts for the first time that he "knows of at least one case where a defendant was offered a potential reduction in his sentence if he could assist in the shutting down of the website." (Defendant's Motion to Dismiss Superseding Indictment Based on Vindictive Prosecution at 9). Bucci does not identify the "case" to which he is referring, nor does he provide any affidavits or further evidence to substantiate this claim. Without more, this assertion does not provide significant support for Bucci's vindictive prosecution claim.

Bucci's motion to dismiss for vindictive prosecution is therefore DENIED.

Bucci's motion to dismiss, motion to dismiss Count Five of the Second Superseding Indictment on statute of limitations grounds, and motion to dismiss the Second Superseding Indictment for vindictive prosecution are each DENIED.

It is so ordered.